MICKLES vs. THE ROCHESTER CITY BANK and others.

It seems that the court of chancery will not interfere to restrain persons claiming to be the rightful trustees of a corporation from acting as such upon the ground that they have not been duly elected; and that the remedy of corporators to contest the validity of the election of such trustees, is by an application to the supreme court.

Although a corporation is deemed to have surrendered its charter in consequence of nonuser, as declared in the thirty-eighth section of the article of the revised statutes relative to proceedings against corporations in equity, the corporation is not actually dissolved before proceedings have been instituted, either at law or in equity, to have such dissolution judicially declared. And a judgment recovered against such corporation before the institution of such proceedings, and a sale of the corporate property upon an execution issued on such judgment, will be valid and effectual to transfer the title of such property to the purchaser.

Whenever any corporation, other than those which are excepted from the operation of the article of the revised statutes relative to proceedings against corporations in equity, has remained insolvent for a year, or has suspended its ordinary business, or has neglected to pay its ordinary and undisputed evidences of debt, for a year, any of its creditors, or stockholders, who have an interest in closing up its affairs, may file a bill in chancery against such corporation to have its dissolution judicially declared, and to have its concerns closed up, and its property distributed, under the direction of the court.

Whether a receiver appointed by the court upon such a bill, and in a case not provided for by the forty-fifth section of that article, will have the statutory powers of receivers of moneyed corporations, or only such powers as the court of chancery can confer upon receivers appointed in ordinary suits in that court? Quære.

A corporation by nonuser and the suspension of its ordinary business, or by continued insolvency or the non-payment of its notes and other evidences of debt, for one whole year, does not become ipso facto dissolved. But the corporation continues to exist until its dissolution is judicially declared, by a decree of the court of chancery, or by the judgment of the supreme court upon a quo warranto.

And until a decree of the court of chancery, or a judgment of the supreme court, has declared the surrender of the corporate franchises, and the dissolution of the corporation, any of the creditors of such corporation may proceed by suit, against it or its property, to obtain satisfaction of their debts; unless restrained by injunction.

Upon a bill filed in the court of chancery against a corporation, to declare its dissolution, under the thirty-eighth section of the article of the revised statutes relative to proceedings against corporations in equity; the complainant may apply for an injunction to restrain creditors from proceeding at law to obtain satisfaction of their debts, and to allow them to come in and make themselves parties to his suit.

The corporation is a necessary party to a bill in chancery to declare the dissolution of such corporation, and to have its property and effects distributed among its creditors and stockholders.

Mickles *v.* The Rochester City Bank.

But where the property of a manufacturing corporation is all exhausted, and a bill is filed for the sole purpose of compelling its stockholders to pay the corporate debts out of their individual property, it seems that the corporation is not a necessary party to such bill, although its dissolution has not been judicially declared.

A stockholder of a corporation, upon a sale of the corporate property, by the sheriff upon execution, may become the purchaser thereof for his own benefit; and if there is no fraud in the sale he is not accountable to any of the other stockholders, although the property is bid in by him much below its value.

The stockholders of a corporation are neither tenants in common nor copartners in reference to the corporate property, either before or after the dissolution of the corporation. Before the dissolution, the whole legal title is in the corporation; and after its dissolution it is in its directors or trustees, under the general provisions of the revised statutes on that subject, where no other disposition of the property is made by law.

Where a judgment creditor of a corporation insured its real estate in the joint names of himself and of the corporation, and the property was afterwards sold under his judgment and bid in by him, and after the sale such property was partially destroyed by fire, and the property was not redeemed from the sale; *Held* that he was entitled to the money received from the insurance company on account of such partial loss.

*Held also*, that if the loss had happened before the sale, or if the corporation had redeemed the property from such sale, the insurance money would have belonged to the corporation.

This was an appeal from a decretal order of the vice chancellor of the eighth circuit. In February, 1840, F. M. Haight and three other persons associated together and incorporated themselves, under the general act relative to manufacturing incorporations, by the name of "The Genesee Cotton Mills," with a capital of $50,000, divided into shares of $100 each; and R. Haight, A. Frost and A. Wolcott were duly appointed the first trustees of the corporation. Soon after the organization of the corporation, the trustees, by a by-law, fixed the time for the annual election of trustees on the first Monday of January in each year; but this by-law was never published as required by the statute, and no election was held under it on the first Monday of January, 1841. In September of that year, however, an election was held under a special order of the old trustees, at which election two of the former old trustees were re-elected; and C. Frost was elected in the place of R. Haight. The secretary of the company gave notice of an election of directors for the first Monday of January, 1844; at which time the then stock-

holders met and elected the defendants Gould, Ward and Smith, trustees of the corporation. The Rochester City Bank, in June, 1841, became the owner of 163 shares of the stock of the Genesee Cotton Mills, and afterwards became the owner of 100 other shares. The complainant Mickles became the owner of 57 shares, and at the time of filing his bill, on the 25th of January, 1844, he claimed to be the owner of 210 shares. At that time R. Haight, one of the original trustees, was the owner of one share, and each of the defendants Gould, Ward and Smith owned one share, and J. Post owned twelve shares. And the complainant alleged that the owners of the remaining shares were unknown to him. In March, 1841, the Genesee Cotton Mills suspended the business of manufacturing, and never afterwards resumed it; and on the 6th of September of the same year, the trustees passed a resolution directing the agent of the corporation to close up its affairs as soon as the same could be done. On the 14th of October, the Rochester City Bank recovered a judgment against the manufacturing corporation for about $335, and in December of the same year, recovered another judgment for nearly $3000; and another judgment in October, 1842, for upwards of $6000, in a suit commenced in the preceding September. At the time the company suspended its manufacturing business, it was the owner of several lots of land and buildings thereon, in connection with water power, and of moveable machinery and other personal property. In November, 1842, executions were issued upon the first and third judgments against the corporation; upon which executions the personal property of the corporation was sold and bid in by the bank for $575. And in February, 1843, the real estate was also sold upon the same executions, and was bid in by the bank for between nine and ten thousand dollars. After the sale of the personal property, and a few days before the real estate was sold upon the executions, the bank caused the moveable machinery to be insured in the name of the bank as owner and in trust; and also caused the real estate to be insured in the joint names of the bank and the manufacturing corporation. In December, 1843, the buildings were injured and the movable machinery was partially destroyed by

fire. The insurance companies repaired the buildings and paid the bank $350 for the damage to the fixed machinery therein; and also paid to the bank $4200 for the damage to the moveable machinery by the fire.

In January, 1844, the complainant, as one of the stockholders of the manufacturing corporation, filed his bill in this cause against the bank, and also against Gould, Ward and Smith, the newly elected trustees, and against R. Haight and J. Post, the two other stockholders whose names were known, stating in substance the above facts, and claiming a discovery of the amount which the bank had received upon debts of the corporation, which had been turned out to such bank in payment of the second judgment, and insisting that the corporation was dissolved before the issuing of the executions and the sale under the same, and that the bank was a tenant in common of the property with the complainant and other stockholders, and was bound to account to them as such for the property and for the moneys received from the insurance companies for the loss occasioned by the fire. The complainant, therefore, prayed that the manufacturing corporation might, by a decree of the court, be declared to be dissolved, and that a receiver of its property and effects might be appointed; that the bank might be declared to hold the real and personal estate of the manufacturing company in trust for the stockholders, or that the sales thereof might be declared void; and that the bank might be required to account for the moneys received from the insurance companies; and that the real and personal property might be sold and the proceeds thereof distributed among the stockholders, after paying the debts due to the bank and to other creditors. The complainant also prayed for an injunction restraining the bank, and the defendants Gould, Ward and Smith, from selling, disposing of, or otherwise interfering with any part of such real or personal estate, or the property or effects of the manufacturing company; and also restraining the bank from receiving from the sheriff a deed of the real estate sold upon the executions.

The Rochester City Bank put in a demurrer to the whole bill for multifariousness; for a defect of parties in not making the

manufacturing corporation a defendant; and in not making the trustees elected in September, 1841, parties; and generally for want of equity. The defendants Gould, Ward and Smith put in their answer to the bill, and moved to dissolve the injunction as to them. This motion and the demurrer were argued together, and the motion was granted and the demurrer allowed by the vice chancellor; and the bill was dismissed as to the bank. From the decretal order made thereupon the complainant appealed.

*D. Cady & E. Griffin,* for the appellant. The corporation of the Genesee Cotton Mills became dissolved and surrendered its corporate rights and privileges by force of the 38th section of the article of the revised statutes relative to proceedings against corporations in equity. A corporation may by doing or suffering any of the acts specified in that section become dissolved, *ipso facto,* and without any process or judgment of a court of law or equity. If this position is not correct with respect to corporations created by special legislative enactment, or rather by special grant of the sovereign power of the state, it is nevertheless true with respect to associations under the act of 1811, relating to manufacturing companies, because these companies are voluntary associations or limited partnerships, formed or created by the act of the parties, and by consequence may be dissolved by the act of the parties. But if we are wrong on the question of the dissolution of the copartnership, still the bill can be sustained against the Rochester City Bank upon the other matters of equity stated in the bill; and if so, the demurrer being to the whole bill, must be overruled. The purchase of the real and personal property of the corporation, by the bank, was a purchase in trust for all the stockholders, or partners and associates in the corporation; and the assertion of and attempt to acquire an absolute estate in the property purchased is inequitable, and a fraud upon the rights of the other stockholders or partners. The claim by the bank to retain the insurance moneys, for its exclusive and separate use, is inequitable and unconscionable, and the right of the complainant to have these moneys applied to the extinguishment

of the debt of the bank against the company is sufficient to sustain the bill. The bill is not multifarious, for it is in substance a bill to settle a partnership; and every matter which would go to increase the assets of the partnership and diminish its liabilities, is a material subject of inquiry, and tends to the point in issue; and all persons interested, or who may be required to account, ought to be made parties. If we are right in supposing that the corporation is dissolved, then the corporation is not a necessary party. It cannot be sued, nor can it sue. The former trustees are not necessary parties, because it does not appear that they have any interest as stockholders, nor does it appear that they have in their hands any of the assets of the corporation for which they should account. They are then mere naked trustees under the act until a receiver is appointed. When the receiver is appointed, he will be entitled to all the property, and may require a surrender from the former trustees of any of the property which may be in their hands, whether they are parties or not.

*E. Peshine Smith*, for the respondents. The corporation of the Genesee Cotton Mills was not dissolved quoad the complainant, by any of the acts or omissions charged in the bill. If the corporation is to be deemed dissolved, then the trustees of the corporation are the proper parties complainant. Whether the corporation be dissolved or not, the complainant makes no case to entitle him to any relief as against the Rochester City Bank. The bank is charged with no fraud, nor with any express trust, nor do the facts charged raise a trust by implication. This court has no jurisdiction in respect to the affairs of corporations, except that declared by the article of the revised statutes entitled "Of proceedings against corporations in equity;" and the complainant does not bring himself within that statute, he being a stockholder merely, and not a creditor, and not charging the stockholders with any fraud or breach of trust committed or contemplated.

THE CHANCELLOR. The question as to the validity of the election of Gould, Ward and Smith, as trustees, if the corporation is not actually dissolved, does not appear to be a proper subject of equitable cognizance. The legislature has provided a summary remedy, by an application to the supreme court, to set aside the election of these directors if it is illegal. (1 *R. S.* 603, § 5.) That court, therefore, is the proper tribunal to set aside the election if it has not been made in conformity to law. And there is no allegation in the bill that these new trustees are insolvent or irresponsible, so as to make it necessary for this court to interfere by injunction to restrain them from wasting the property of the corporation pending the application to the supreme court.

The complainant's bill shows a case in which this manufacturing corporation is brought clearly within the provisions of the 38th section of the article of the revised statutes relative to proceedings against corporations in equity, which declares that by certain acts of nonuser incorporated companies shall be deemed to have surrendered their rights, privileges and franchises, and shall be adjudged to be dissolved. (2 *R. S.* 463.) Several questions are presented for consideration upon this state of facts. The complainant insists that by the nonuser and suspension of the ordinary business of the corporation for one whole year the corporation became ipso facto dissolved; and that the judgments recovered after that time, and the sale of the property upon executions subsequently issued, were unauthorized and void, and gave no title to the purchasers of the property under those executions. The counsel for the respondents, on the other hand, insists that the corporation continues to exist until the surrender of its franchises has been duly declared by a court of law, upon a proceeding by quo warranto; and that this court has no jurisdiction to declare the dissolution of the corporation upon a bill filed by a stockholder.

As to the first question, I have no doubt that the judgments and executions, and the sale of the corporate property under them, before any proceedings had been instituted, either at law or in equity, to obtain a judgment or decree declaring a surrender of

the corporate franchises and a dissolution of the corporation, was valid. And by the sale the purchasers acquired the legal title to the corporate property which wa's conveyed to them by the sheriff. The object of the statute was not to put an immediate end to the corporation for all purposes, at the termination of the year from which the insolvency or non-user commenced, so as to deprive its creditors of all the rights and remedies by suit against the corporation itself; but to enable the creditors, and all others who were interested in having the surrender of the corporate privileges and a dissolution of the corporation judicially declared, to take the proper proceedings for that purpose. Until a judgment upon a quo warranto, or a decree of this court, therefore, has declared a surrender of the corporate franchises and the dissolution of the corporation, any creditor is at liberty to proceed by suit, against the corporation and its property, to obtain satisfaction of his debt, in the same manner as if the alleged surrender by insolvency or non-user had not occurred. And if any of the creditors wish to prevent other creditors from obtaining a preference, they must file their bill for the purpose of obtaining a judicial declaration of the fact that the corporation has surrendered its corporate rights and franchises, according to the provisions of this 38th section, and for a decree declaring the corporation dissolved, and directing the appropriation of its property and effects to the payment of its creditors. Then, by an application under the 56th section of the same article, they may, if a proper case is shown, be entitled to an injunction restraining proceedings at law of the other creditors to obtain a lien and preference in payment out of the corporate property ; and allowing such creditors to come in and make themselves parties to the suit in chancery.

The 38th section of the article before referred to has no immediate connection with the four sections which immediately follow it, and which appear to be confined to moneyed corporations ; nor with the two sections which precede it, which provide for the case where an execution at law against the corporate property has been returned unsatisfied. It is doubtful, therefore, whether a summary application, by petition and notice to the

proper officers of the corporation, can be made in the case of an incorporated company which is not a moneyed corporation, and where no execution at law has been returned unsatisfied. The object of introducing this 38th section into the article relative to proceedings against corporations in equity, when the same provision in terms was contained in the last clause of the fourth section of the title containing special provisions relative to certain corporations, (1 *R. S.* 603,) could have been for no other purpose, however, than to give to this court the power to decree and declare the surrender of the corporate rights and franchises, and to decree the dissolution, of corporations which were not moneyed corporations, in cases coming within the provisions of this 38th section. When any corporation, therefore, other than those mentioned in the last section of that article, has remained insolvent for a year, or has neglected or refused for that length of time to pay its ordinary and undisputed evidences of debt, or has for one whole year suspended the ordinary and lawful business for which the corporation was created, I think any creditor or stockholder, who has an interest in closing up its affairs, and having its effects applied to the payment of its debts or distributed among its stockholders, may file a bill in this court against the corporation, to have its dissolution judicially declared, and its concerns wound up under the direction of the court. Whether a receiver appointed upon such a bill, in a case not provided for by the 45th section, will have the statutory powers given to receivers of moneyed corporations, or only such powers as this court can confer upon its receivers appointed in ordinary suits between party and party, is a question not necessary to be discussed here.

The objection raised by the demurrers, that the corporation itself is a necessary party to a bill, filed under this 38th section, to declare the surrender of its corporate rights and privileges, and obtain a decree of dissolution, and to distribute its corporate property and effects among its stockholders, appears to be well taken. Where the corporate property of a manufacturing corporation is all exhausted, and the bill is filed against the stockholders by a creditor of the company, for the mere pur-

Mickles *v.* The Rochester City Bank.

pose of enforcing the personal liability of the stockholders for the debts of the company, it may not be necessary to make the corporation itself a party, although its dissolution has not been judicially declared. But where the object of the bill is to divest the corporation itself of any of its property, or of any of its corporate rights or privileges, upon the ground that it has forfeited its charter or surrendered its franchises, the other defendants in the suit have a right to insist that the corporation itself shall be made a party ; to the end that the decree may be binding upon such corporation, and that the other defendants may not be subjected to future litigation with the corporation itself in relation to the same matters. In the present case, one object of the bill is to compel the bank to account for the money received for the insurance, which had been effected upon the real estate before the property was actually sold upon the execution. And a decree that the bank was not liable therefor, or that the bank should account for it to the complainant and other stockholders, would not prevent the manufacturing corporation from afterwards filing a bill for the same matter. For that decree would not be binding upon the corporation, nor be any evidence of the fact, as against the corporation, that it had surrendered its corporate rights and privileges.

It would be a matter of course to permit the complainant to amend, by making the corporation a party, if there was sufficient equity in the bill in other respects. But the principal object of the bill appears to be to set aside the sales of the property of the corporation, upon the ground that the sales were invalid. In this, the complainant must necessarily fail, upon the allegations in the bill, even if the corporation is made a party. For the sales were valid, and gave a good title to the purchaser. And one stockholder of a corporation has a perfect right to become a purchaser, for his own benefit, at a sheriff's sale of the corporate property upon an execution against the corporation ; nor is he accountable to any other stockholder for such property, if there is no fraud in the sale, even where the property is bought in by him much below its value. The remedy of the other stockholders is to attend the sale, upon the executions, and bid up the property to its cash value, and thus prevent the same from being

sacrificed. The stockholders of a corporation are neither tenants in common of the corporate property nor copartners, either before or after the dissolution of the corporation. Before the dissolution the whole title is in the corporation itself, as the legal owner; and upon its dissolution, if no other provision is made, the whole title vests in the directors or trustees then in office, under the general provision contained in the revised statutes on that subject. (1 *R. S.* 601, § 9.)

This of course disposes of the whole question as to the insurance money received for the moveable machinery, as the property belonged to the bank at the time the insurance was effected. The insurance upon the buildings and fixed machinery was effected three days before the sale of that part of the property. And as it was effected in the joint names of the bank and of the manufacturing corporation, the $350, received for the damage to the fixed machinery, equitably belongs to the party who sustained the loss. If the fire had occurred before the sale, the amount of the proceeds of the sale would have been proportionably diminished. The manufacturing corporation would in that case have sustained the loss and would equitably have been entitled to the money. But I infer from the bill that the fire occurred after the sale. The loss, therefore, falls upon the purchaser at the sale, as the property was not redeemed within the time allowed by law for that purpose. If the corporation had elected to redeem within the year, it would have been entitled to this $350, as a part of the property redeemed; that being the substitute for so much of the property bid off at the sale as was subsequently destroyed by the fire.

It is not stated in the bill that there is any property, or any effects of the corporation, other than the property sold on the executions, which could give the complainant any interest in a formal decree declaring a dissolution of the corporation and directing its surplus effects to be distributed among its stockholders. It would, therefore, be a useless expense to the complainant to amend his bill and make the corporation a party. I presume then that no such amendment was asked for before the vice chancellor. The dismissal of the bill, as to the Rochester City

Bank, was the necessary result of the allowance of its demurrer.

The bill being defective both in form and substance, the injunction should not have been granted as to any of the defendants. It was, therefore, properly dissolved upon the matter of the bill alone, and without reference to any thing contained in the answer of the other defendants.

The decretal order appealed from must be affirmed with costs.(*a*)

(*a*) Affirmed on appeal to the court for the correction of errors, December 28th, 1845.