# SUPREME COURT.

JOSEPH M. WARREN agt. JOHN S. FAKE, President of the Exchange Bank of Lansingburgh, JOHN S. FAKE, ALFRED W. McMURRAY, HENRY W. MOSHER, FRANCIS S. THAYER, THOMAS LAPE and JOHN H. GILLESPIE.

*Appointment of receiver of assets of a bank after its liquidation.*

Where a bank has gone into liquidation and closed up its business leaving its assets and property in the hands of its former directors for some three years, without any accounting with the stockholders during that time; in an action by a stockholder against these directors individually, charging them with abusing and neglecting their trust, and wasting the effects of the corporation, a receiver will be appointed by the court, *ex parte*, to take possession of the assets and property and make a proper distribution of it among its owners.

An injunction alone would be of no avail in such a case, as much of the danger consists in the defendants' refusing to take any action whatever — the waste from simple neglect of duty — and that writ is powerless to compel the performance of official trusts.

*Ulster Special Term, April,* 1875.

MOTION by defendants to vacate and set aside an order appointing a receiver of the assets and property of the Exchange Bank of Lansingburgh.

*Cowen, Parmenter & Townsend,* for defendants and the motion.

*Patterson & Colby,* for plaintiff and opposed.

WESTBROOK, *J.* — On the 13th day of July, 1872, the Exchange Bank of Lansingburgh, which had previously

carried on the business of banking under the laws of this state, upon the written consent of its shareholders, who held two-thirds of its capital stock, and the unanimous vote of its directors authorizing the act, gave to and filed with the superintendent of the bank department of this state a written notice that it intended " to close the business of banking in the manner prescribed by law."

Since that date (July 13, 1875) " the said Exchange Bank of Lansingburgh has utterly and entirely ceased to be a bank for the purpose of deposit and discount, and has neglected and failed to avail itself of its corporate rights, privileges and franchises as a bank, and has wholly failed and neglected to transact any business whatever as a bank.

The individual defendants were, with one Josephus P. Leavens, since deceased, the directors of the bank when it resolved to go into liquidation, and have continued to act as such ever since, and did at the time of the commencement of this suit, hold its property and assets.

Upon a complaint showing the above facts, and further stating and charging, as was then and is now claimed by the plaintiff, that the individual defendants were abusing and neglecting their trusts and wasting the effects of the corporation, an *ex parte* order was made appointing Mr. John P. Albertson receiver thereof, and requiring him to give a bond in the penalty of $100,000 for the faithful discharge of his trust, the sureties thereon to be appointed by the county judge of Rensselaer county. The receiver having given the bond and qualified as such, a motion is now made by the defendants to vacate the order appointing the receiver. The motion is based simply upon the papers on which the original application was granted, and all the allegations contained in such papers must therefore be assumed to be true.

Perhaps it should be stated, preliminarily, that the order appointing a receiver would not have been made *ex parte* if the corporation had been engaged in active business. That had been suspended for nearly three years, and the assets

were simply in the hands of the defendants for collection and distribution; and as chapter 151 of the Laws of 1870, entitled "An act to regulate proceedings against corporations by injunction and otherwise," excepts "corporations or associations having banking powers" from its provisions; and as the order was in conformity with rule ninety-four of this court, requiring the defendants to show cause at a short day why it should not be continued, and the character of the person appointed receiver unexceptionable, and the security ample, no special objection could be seen to the appointment made.

It is now objected that the corporation is not yet dissolved, and that this court has no power in this action, which is by a shareholder, to appoint a receiver. The objection presents this question: Can the court, at the instance of a shareholder in a corporation which has ceased to do business and resolved to wind up its affairs, for any cause take possession of its assets, through a receiver, and distribute them among the persons entitled thereto? In other words, if a person or persons has or have in his or their possession property in which others have an interest, and which is being squandered or wasted, can this court, at the instance of parties interested in the property, interfere for its preservation and proper division among the owners? If this was a case of ordinary partnership, the right would not be questioned, and the power, if possessed in cases like this, could be often so properly exercised for the furtherance of justice, that the objection which denies its existence should not be entertained unless the law sternly requires it.

It is not, in my judgment, necessary in this case, to discuss very many of the questions which have at various times been raised, as to the power or propriety of this court's interference with a corporation in full life and activity at the instance of a shareholder. This case presents no such question. The Exchange Bank of Lansingburgh has formally resolved to suspend its own existence, and has taken the requisite steps

so to do; and the complaint expressly avers that since the 13th day of July, 1872, it "has utterly and entirely ceased to be a bank for the purposes of deposit and discount, and has neglected and failed to avail itself of its corporate rights, privileges and franchises as a bank, and has wholly failed and neglected to transact any business whatever as a bank." It doubtless, for certain purposes, still maintains a *quasi* existence, but it no longer lives an active life, and its assets are, as the complaint expressly avers, in the hands of the individual defendants.

Practically, then, this suit is against individuals. It interferes with no corporate rights and franchises which are being exercised, but seeks to take from individuals, who are trustees for the various owners, property which, as is claimed, is endangered, and which should be protected and divided. It is true that the bank is a nominal party to the action, and it is proper that it should be (11 *Paige*, 126), but the real parties are the individual defendants, who alone are affected. The corporation has consented to a dissolution ; it has failed, in addition, to exercise its franchises for a period sufficiently long (2 *Edmonds*, 484, *sec.* 38) to be adjudged dissolved, and the simple question is : Has this court any power, in behalf of parties interested in the fund and for the protection of rights, to interfere and declare who shall administer upon its effects ? It is not apparent to me how these defendants occupy any other or better position than any individuals who hold property for the benefit of others. Undoubtedly they are its legal custodians so long as they honestly perform the trust, but when that is abused, I do not see how their hold upon the property is any more sacred because derived from a practically dissolved corporation, than it would have been if it had come to them from a dissolved partnership, in the winding up of which their partners had intrusted them with the assets. None of the provisions of our statutes in regard to suits against corporations that I have seen reach this case, and it ought in my judgment to be controlled by those prin-

ciples which guide this court in suits between individuals. Certainly none of the reasons which would influence legislation in guarding living corporations, can apply to these defendants, who are simply custodians of property for the benefit of owners and charged with no duty in regard to its employment for their mutual advantage.

Regarding this case, then, as one against individuals who have possession of property which belongs to them in common with others, not for the purpose of conducting a corporate business, but simply and only to be appropriated for the benefit of all interested, and who are also bound to account to the plaintiff, among others, for the use and care of that property, I know of no reason why this action cannot be maintained and the order appointing the receiver sustained, upon the same principles which authorize courts to interfere in the case of property in the hands of parties for their own benefit, and also for the benefit of others, who take no active part in its management, provided the allegations of the complaint be sufficient for that purpose. None of the decisions to which I have been referred cover this case, and it seems to me to be maintainable upon the general principles, which govern the court in the appointment of receivers over property in which a number of persons are interested.

Neither is it necessary upon this motion, to decide how long the individual defendants could hold the assets of the dissolved corporation provided they were honestly and faithfully exercising their trusts. That question would arise, if the order was to stand solely upon a refusal to distribute the assets, without any allegations of fraud or neglect of duty; but as it does not, I decline to pass upon that question.

The complaint, after averring that the corporation has resolved not to exist, that it has taken the requisite initiatory steps to end its life, and that from non-user of its franchises it is actually dissolved and that the individual defendants hold its assets, except such as have been lost, wasted, misappropriated, or distributed, charges : First. An utter failure,

neglect, and refusal by them faithfully to discharge their duties as trustees for the benefit of the creditors and shareholders of the bank.   Second.  That they have neglected to settle the affairs of the association, and to collect and convert into cash or available funds the assets and securities of the said association, and to pay its outstanding debts and liabilities. Third.  That "upon proper demand made, said directors have wholly neglected and refused, and they still do neglect and refuse to render to the shareholders of the said association any statement whatever of the affairs of said association, its liabilities, assets or resources."

These allegations are sworn to, and as they are stated and averred as facts, the verification to the complaint covers them. The form of the affidavit to the complaint is precisely that prescribed by section 157 of the Code, and is held to be sufficient.

In addition to this, the papers used in connection with the complaint show that the report made to the bank department on the 11th day of July, 1872 (two days before the resolution to dissolve was adopted) exhibited the capital of the bank ($100,000) as unimpaired, and a surplus of over $11,000, and that now, whilst only $25,000 of the capital has been divided among the shareholders, the former officers declare that all which remains of its assets is a worthless note of $30,000.  If these facts be taken in connection with positive sworn statements of failure to perform their trusts, misappropriation and mismanagement, and a refusal "upon proper demand made" to render any account whatever, it seems to me to be eminently a proper case for the interposition of the court.  An injunction alone would not avail.  Much of the danger consists in refusing to take any action whatever — the waste from simple neglect of duty — and that writ is powerless to compel the performance of official trusts.

Neither, even though the defendants are responsible, would a suit to make them personally liable afford adequate redress. Their actions are secret and hidden, and when their final

Warren agt. Fake.

report is presented (several years hence, as counsel aver it can only be made) their present solvency may vanish, or if still existing, illegal transactions may be so hidden and covered by continued possession of the books and papers of the corporation, as to render the action barren in result.

Substantial justice, judging from the facts now before me, will, I think, be best promoted by retaining the receivership. No question is made as to the competency, integrity and fairness or the abundance of the security of the person appointed. In his hands the interests of no person can suffer, and by the retention there of the assets of the corporation for the benefit of all parties, at least for a time, the court, when more fully possessed of all the facts, can make such further order as may be just in the premises. In the mean time, by the possession of all the property of the late corporation, a thorough investigation of every transaction can be made. If its administration has been honest and fair, the research will dissipate suspicion and relieve all unjust accusation. The vacation of the order would only stifle inquiry, and place with the defendants the barren possession of that which cannot legally be to them a source of gain. The receiver will as sacredly guard their rights as those of the plaintiff and those acting with him. At present the interests of all are surely protected, and it is better and safer for the court to retain the property until it obtains more light to guide it to an equitable and a righteous result.