CHRIST CHURCH IN DELAWARE CITY *et al.*

*vs.*

REV. HENRY L. PHILLIPS *et al.*

New Castle.  At Chambers, Feb. 1882.

*Ecclesiastical law; property rights; title to office.*

1. The court of chancery does not administer ecclesiastical law; it does not sit to administer church discipline, or to determine church relations.

2. The relation of a minister to the Protestant Episcopal Church in Delaware is to be determined by the ecclesiastical authority of the diocese; and the action of that authority, within the sphere of its jurisdiction over the subject-matter and over the minister, is to be considered final and conclusive, and not the subject of review by the court of chancery.

3. Church property and the right to its possession and use are, however, subjects for the judicial determination of the civil tribunals.

4. The question as to who, of opposing claimants, are the legal wardens and vestrymen of a Protestant Episcopal Church is one to be determined at law, and not in equity; and equity will not interfere in the matter by injunction.

RULE TO SHOW CAUSE WHY AN INJUNCTION SHOULD NOT ISSUE.—The questions passed upon are fully stated in the opinion.

*Austin Harrington* and *George H. Bates* for the complainants.

*John P. Saulsbury* for the defendants.

THE CHANCELLOR.—The only matter which I deem proper to consider in this case is whether the court of chancery has

jurisdiction to determine in these proceedings who are the legal wardens and vestry of Christ Church in Delaware City, New Castle County,—the complainants or the defendants,— and whether it has the power to grant the relief asked, or ought to do so.

Both the defendants and the complainants claim to be wardens and vestry of said church, and have, in the exercise, I fear, not of the most Christian spirit, brought their contentions here for determination.

I shall not consider the allegation of the bill in respect to anything else than the jurisdiction of this court to decide the legal status of the parties,—plaintiffs and defendants. The sooner all other disputes and controversies in respect to Christ Church are forgotten the better it will be for the church itself, as well as for the Christian reputation of the persons claiming to be members of that church who have been engaged in them.

The Constitution of this State has vested judicial power in certain courts, one of which is the court of chancery. Its jurisdiction is limited to causes in equity arising under the Constitution and the laws of the State made in pursuance thereof. It possesses no power to dictate ecclesiastical law, or to decide questions arising thereunder; nor has it the power or disposition to invade the legitimate domain of the church, nor does it possess authority in any manner to amend or abrogate the laws or canons thereof. It will not attempt to administer its discipline.

The only cognizance which this court would, under any circumstances, take in a controversy between the bishop of the Protestant Episcopal Church and a minister of that church, relating to their respective powers, authority or rights as members or officers of the church, arising under the administration of the canons and laws of the church, would be to inquire whether the bishop had, under the constitutional laws of this State, jurisdiction to do the act questioned by the minister.

This court does not administer ecclesiastical law. It does

not sit to administer church discipline or to determine church relations, either of bishops, ministers or members.

Those curious of information in respect to such subjects. may have their curiosity somewhat gratified, perhaps, by perusing the opinion of Thornton, *J.*, in the case *Chase* v. *Cheney* in the Supreme Court of the State of Illinois (58 Ill. 527).

· If the purpose of the complainants or defendants, therefore, in filing the bill in this cause was to obtain the decision of this court as to the right of two of the defendants, Rev. Mr. Phillips and Rev. Mr. Stewart, to exercise ministerial functions in Christ Church, Delaware City, I must decline to entertain that question, as being one, as presented by the bill and answer, purely ecclesiastical, and not involving considerations civil in their character, and therefore not properly determinable in this tribunal.

I have made these remarks, not because I considered them as essential or necessary to the proper decision of the only matter in dispute before me of which I feel free to take cognizance, but for the purpose of a more definite statement of the principle I announced during the earlier stage of the proceeding, that the relation of Mr. Phillips to the Protestant Episcopal Church in Delaware was to be determined by the ecclesiastical authority of the diocese,—the bishop acting by and with the advice of a standing committee of the diocese ; and that this action of the bishop within the sphere of his jurisdiction over the subject matter in controversy and over the minister was here to be considered final and conclusive, and, were not subjects of review by this court.

The jurisdiction of the civil tribunal over church property does not conflict with the exclusive jurisdiction of the church authorities in the exercise of their ecclesiastical powers, in any respect whatever.

Property and the right to the possession and use of property are, however, subjects for the judicial determination of the civil tribunals.

This, in the language of another, " is no interference with vital christianity, but leaves it free and undisturbed by the

civil power, and may check its intermeddling as an organic power with civil and political rights."

In Rev. Code of this State, chap. 39, § 1, it is provided " that any religious society or congregation of Christians, consisting of fifteen or more persons, may become incorporated by the election of trustees, not less than three nor more than twelve, and. the taking the name and certifying the same under the hands and seals of said trustees to the recorder of deeds."

Section 3 of the chapter declares that the trustees so elected, and their successors, shall be a corporation by the name so adopted and certified ; shall have perpetual succession, with all the incidents and franchises of a corporation aggregate, and with power to purchase, receive, hold and enjoy property, real and personal, for the use of the said society or congregation, their ministers or members, or for schools, almshouses or burying-grounds. The act of a majority of the trustees shall be valid.

Section 4 declares that all the estate, right and title which any society or congregation may have in any property, real or personal, in themselves, or by trustees, or for their use before incorporation, shall upon incorporation become vested in the trustees, who may grant, demise or dispose thereof.

By § 9 it is declared that the rector, wardens and vestrymen of any Protestant Episcopal Church, on certifying their name or style, as provided by § 1, shall be a corporation with the franchises, rights and powers herein vested in trustees of other religious societies.

The rector, wardens and vestrymen of Christ Church in Delaware City, being a Protestant Episcopal Church, complied with the provision of this section ; and the question therefore before me in this cause is, " Who are the legal wards and vestrymen of said church—the complainants or the defendants ?

This is purely a. legal, and not an equitable question.

Courts of equity will not interfere to restrain persons claiming to be rightful trustees of a corporation from acting

as such on the ground of their not being elected.  Ang. & A. Corp. § 140 ; *Mickles* v. *Rochester City Bank*, 11 Paige, 118.

Where the right is doubtful, courts of equity will not interfere until that right is established at law.  7 Hare, 221, note.

Many cases might be cited in support of these propositions, but it is unnecessary.

It may now be considered as a settled rule that courts of equity will not interfere to determine who are or who are not trustees of a religious corporation in a controversy between opposing claimants as such.  High, Injunctions.

The proper tribunal to determine such a question is the superior court of the State by writ of *quo warranto.*

The rule to show cause, heretofore granted, why an injunction should not be awarded against the defendants is therefore discharged, and the bill dismissed, with costs.