# CHARLESTOWN.

## HURST v. COE.

Submitted September 9, 1887.—Decided September 23, 1887.

1. CORPORATIONS—DISSOLUTION—PARTIES.

The corporation is a necessary party to a bill filed by not less than one third in interest of its stockholders under the 57th section of the 53d chapter of the Code, who desire to wind up its affairs and ask the court to decree a dissolution of such corporation and to sell its property real and personal and distribute the proceeds of the sale among those entitled thereto. (p. 168.)

2. CORPORATION—DISSOLUTION—JURISDICTION.

In such suit the court cannot render such decree, even when a majority in interest of such stockholders are plaintiffs desiring to wind up its affairs, unless sufficient cause is shown therefor, though under the 56th section of chapter 53 of the Code these plaintiffs have the absolute right to discontinue the business of such corporation by a vote of a majority of the stockholders. But on the other hand a Circuit Court has jurisdiction on a proper case being shown to decree a dissolution of such corporation and make such other orders and decrees, as justice and equity may require, even though the plaintiffs in such bill desiring to wind up its affairs represent a majority in interest of the stockholders of such corporation. (p. 166.)

3. CORPORATIONS—DEPOSITIONS—INFANTS—INSANITY—CESTUI QUE TRUST.

The provision contained in chapter 85 of the Code, section 4, that "no deposition shall be read in the suit against any infant or insane party except by leave of the court, unless it be taken in the presence of the guardian *ad litem* or upon interrogatories agreed upon by him," has no application in such a suit, though a stockholder in such a corporation and as such a defendant in such a suit for its dissolution is an infant or insane party, as this 4th section is confined in its operation to suits instituted under the provisions

of chapter 83 of the Code, that is, to suits, the object of which is to lease or sell the lands of persons under disabilities or lands held for *cestuis que trust*. (p. 167.)

Statement of the case by GREEN, JUDGE :

This is a chancery-suit instituted in January, 1886, in the Circuit Court of Jefferson county by J. Garland Hurst and Eugene Baker, owners of a majority of the stock in the Shannondale Springs Company in Jefferson county, to dissolve this corporation, if not already dissolved, sell its property and distribute the proceeds among the stockholders ratably, it owing no debts. The defendants in the cause were Eliza S. Gallaher and Sallie T. Coe, they being all the other stockholders in the corporation besides William H. Travers, who was by mistake omitted as a defendant, the plaintiffs, when the bill was filed, not knowing, that he owned one share of the stock. But he was subsequently made a defendant by an amended bill. Nancy Cramer and an infant, Ellie D. Cramer, were also made defendants, as the interest of Eliza S. Gallaher in the corporation was under the will of Eliza S. Sappington held by her in part on certain trusts for these parties, which trusts were specified in the will. The bill in addition to these facts stated, that this corporation was incorporated by the Legislature of Virginia by a special act passed March 23, 1838, and owned a tract of land of 189 acres on the east side of the Shenandoah river in said county, on which were several medicinal springs, and upon which tract it erected a large hotel and a number of cabins for the accommodation of visitors ; that the hotel was destroyed by fire in 1859 ; and the corporation has never since had the financial ability to re-build it and has been therefore ever since unable to carry out the object, for which it was incorporated ; that the corporation has since then rented out the tract of land for farming purposes and occasionally has rented out some of the cabins to straggling seekers for health or pleasure, and the small amounts thus derived have deen distributed among the stockholders ; that the plaintiffs owned 300 shares of the stock, which, they say, was four fifths of all the stock, and they claim, that the interest of all the stockholders would obviously be promoted by a sale of all the property of this corporation and a distribution of the proceeds among the

stockholders according to their several interests and a disso-
lution of the corporation, especially as, they say, "it is utterly
impossible longer to continue said corporation under the
provisions of its said charter, that, whenever the stock of said
company shall be concentrated by purchase or otherwise in
the hands of less than five members, all the corporate privi-
leges, shall cease and determine; that there were then but
four stockholders of this company." This last statement how-
ever was a mistake, as William H. Travers, a fifth stock-
holder, owned one share; and he was afterwards made a de-
fendant by an amended bill. The corporation however was
never made a defendant in this action.

The bill was demurred to; and the demurrer was overruled.
Eliza S. Gallaher, one of the stockholders owning thirty
shares of stock but partly on certain trusts under the will of
Mrs. Sappington, was an infant and answered the bill and
amended bill by T. W. Latimer, the clerk of the court, who
was appointed her guardian *ad litem*. This answer admits
nothing and calls for proof of all the allegations in the bill
and amended bill. The answers of Sallie T. Coe and William
H. Travers admit generally the allegations in the bill and
amended bill, except that they say, that some of the reve-
nues of the company have been withheld from the stock-
holders by the officers and managers of the corporation, of
which the complainants are directors and one of them, Eugene
Baker, president. They say, that the stock of this corpora-
tion is by its charter personal property, and that there is no
necessity, that the corporation should be dissolved or its
property sold, as each of the plaintiffs or any other stock-
holder can by its charter sell and transfer his certificate of
stock as personal property; that this corporation still exists,
as there are five stockholders in it, though the president and
directors of it have in violation of their duty declined to call
a meeting of the stockholders or to report the present condi-
tion of its affairs and distribute the funds now on hand
among the stockholders. They deny, that it would be to the
interest of stockholders, especially the minority, who are de-
fendants, that the court should sell the property of the com-
pany as asked; and they deny the power of the court to do
so. They deny, that this property has ceased to be used for

the purpose, for which the corporation was created, but aver, that from year to year it is sought by visitors for health, rest and recreation, and the cabins are rented for that purpose.

.To these answers general replications were filed, and sundry depositions were taken both by plaintiffs and defendants; but the record does not show, that any of them were taken in the presence of the guardian *ad litem* of the infant defendant, Eliza S. Gallaher, or that any of them were taken upon interrogatories agreed upon by him. These depositions prove generally the facts stated in the bill and amended bill as qualified by the answers of the adult defendants. "They prove, that there were twelve or thirteen cabins, which were getting from year to year in a worse condition, but which were still rented out in the summer-time as sleeping apartments bringing a rent of about $25.00 each year; that the company also owned a ferry-house and a ferry, which it rented for about $50.00 a year; and that it also rented out the farm of 189 acres, the entire revenue from all sources named being about $250.00 a year; that its assets then on hand collected and uncollected amounted to somewhat more than $1,000.00; that it owed no debts; that the cost of rebuilding the hotel burnt in 1857 would be about $30,000.00; and that the company could not re-build it. The number of shares in the company is stated in the bill and in the answers of the adults to be three hundred; but, while this would seem to be assumed as true, it is no where proven in these depositions. The president, Eugene Baker, deposes, that he had been receiving the rents and income of the company and making the disbursements which were principally to stockholders at their general meetings; but that there had been no such meetings for two or three years. He files with his deposition a detailed statement of his receipts and disbursements since the last meeting of the stockholders.

On February 16, 1887, the following decree was entered:

"This cause coming on to be heard this 16th day of February, 1887, on the papers formerly read in the cause and the depositions of B. F. Milton, Samuel Hill, Eugene Baker and Bushrod Smallwood, and argument of counsel thereon, and it appearing to the court, that the complainants are entitled to the relief asked in their bill, it is therefore adjudged, or-

dered and decreed, that the Shannondale Springs Company, a corporation chartered and formed under the Acts of the Legislature of Virginia, passed March 23d, 1838, be and is hereby dissolved, and Wm. H. Travers and George Baylor are hereby appointed receivers to take possession of the property of said corporation and make sale thereof, the real estate on the terms of one third cash, the residue in one and two years, equal payments, to be secured by bonds of purchaser and retention of title until the entire purchase-money is paid; but before making sale of said real estate the said receivers are required to give four weeks' notice thereof by publication in some newspaper published in this county and by posters, if they deem it advisable, and the personal property on such terms and time as said receivers may deem advisable at either public or private sale. But before said receivers, or either of them, shall proceed to execute this decree, they, or the one acting, shall execute bond, with approved security, before the clerk of this court, conditioned according to law, in the penalty of $5,000.00, and the said receivers shall give the notice required by section 56, chapter 53, of the Code of West Virginia, of the dissolution of the said corporation by publication for six weeks in some newspaper published in Charlestown, and shall make report of their proceedings hereunder to the next term of this court; and the said defendants, W. H. Travers and Sallie T. Coe, having expressed an intention of applying for an appeal from this decree to the Supreme Court of Appeals of this State, it is ordered, that the execution of the foregoing decree be suspended for the period of 30 days to enable them, or either of them, to apply for an appeal, upon the said defendants, or either of them, giving bond with security to be approved by the clerk of this court, in the penalty of $100.00, conditioned according to law.

To this decree as well as to the decree rendered on June 2, 1886, overruling the general demurrer to the bill, the defendants, Sallie T. Coe, William H. Travers and Eliza S. Gallaher, obtained from this Court an appeal and *supersedeas*.

*W. S. Travers* for appellants.

*George Baylor* for appellees.

GREEN, JUDGE :

A suggestion has been made by the appellees' counsel, that inasmuch as by the charter of the Shannondale Springs Company (Acts of Va. of 1837-8, ch. 248, sec. 3,) it is provided, " that for the purpose of managing the affairs of the said company there shall be chosen on the first Monday in August annually five directors, who shall be stockholders of said company and shall remain in office till the first Monday in August next ensuing, or until their successors are appointed, and that they may choose a president and do all acts and things touching the affairs of the company not otherwise provided for; " and that inasmuch as the capital-stock of the company was by the second section of its charter fixed at not less than $39,000.00 nor more than $100,-000.00, divided into shares of $100.00 each, it was evidently necessary and proper, that a court of equity should, as it did, take jurisdiction of the case and dispose of the property, which had belonged to the Shannondale Springs Company, as there was, when this suit was instituted, no legal organization of this corporation.

To these suggestions it may be replied : First, that the first section of the charter of said company provided, " that whenever the capital-stock of said company shall be concentrated by purchase or otherwise into the hands of less than five members of said company, all the corporate privileges hereby granted shall cease and determine." The record discloses, that under this provision there has been no dissolution of such corporation, as there are now and always have been not less than five members of said company, so that it does not appear, that the stock of this company has ever been concentrated into a less number of hands, than this first section permitted.

But it is argued that though there be five members of this company, one of them is an infant, and another, Sallie T. Coe, is a married woman, neither of whom, it is claimed, could be a director of the company, and the second section requires that there shall be five directors of the company to manage its affairs, and therefore, as each director is required to be a stockholder, it follows, that there can not be any longer a legal organization of the company or any legal

management of its business, and nothing can remain but for the court to declare it dissolved and sell and properly dispose of all its property.

The answer to this suggestion is, that there is nothing in the record showing, that this corporation was dissolved, when this suit was brought. Thus in the case of *Russel* v. *McClean*, 14 Pick. 63, it was decided and properly decided, "that a purchase by only two individuals pursuant to an agreement between them of all the shares of a manufacturing company does not dissolve the corporation, nor do these two individuals thereby become joint-tenants or tenants in common in consequence of such purchase." The reasoning, on which this conclusion is based, is this: "They did not by this arrangement acquire a legal title to the corporate property. They had indeed joint and equal control over it; but their acts and doings must appear through the proceedings of the corporation in due forms of law. The legal title in the corporation remains, notwithstanding the individual members change. The stock, if every individual member should decease at the same moment, would be distributed according to the statute of distributions or according to the wills of individuals deceased. The legal representatives of the deceased members would have authority by law to manage the corporation; and no dissolution would in such case take place. It is said that the parties held for two years without doing any corporate act. If it were so, we cannot perceive, that they would become partners instead of corporators. If the shares of the corporation should all center in one person, and the forms of proceeding or by-laws should prescribe acts to be done by two or more, we do not perceive any difficulty in the sole owner making sale of shares so as to conform to the letter of the rule. There is, we think, no evidence of a dissolution." So we think, when the suit before us was brought, there was no evidence of the dissolution of the corporation. The plaintiffs who owned one hundred and twenty shares each could at any time have distributed other shares or sold any number of them to half a dozen persons, who would have thus become stockholders; and out of them, there could have been elected the five directors and president, by whom the business of the corporation was to be conducted,

Though it may be entirely proper under the facts, which have been or may be proved in this case, for the court to order a dissolution of the corporation and a sale and distribution of its property, yet these results would not necessarily follow, because there were but five members of the corporation, and one of them was an infant, and another was a married woman, and several years had elapsed since there had been any meeting of the stockholders or directors.

Chap. 248 of the Acts of Va. of 1837–8, sec. 2, on its face shows, that the Shannondale Springs Company had at one time a legal existence, the minimum shares of stock of $100.00 each being 390 shares originally owned in certain specified portions by ten several stockholders named. There is nothing in any part of this record to show, how the number of shares of this corporation owned by the stockholders diminished from 390 shares, which the act of incorporation on its face shows was originally held, to 300 shares. There is no sort of indication in the record, as to how said diminution could have legally taken place ; nor can the court on the present record assume, that such diminution has taken place, though it may possibly be true. But no mode, by which such elimination in the number of shares did legally arise, has been either shown or suggested. It is true, that the bill states generally, " that there are 300 shares of stock in said corporation, that your orator, J. Garland Hurst, owns 120 shares, your orator, Eugene Baker, owns 120 shares, Mrs. Sallie Coe 30 shares, and Eliza S. Gallaher 30 shares ; " and the answers of Sallie T. Coe and William H. Travers, adult defendants, admit this statement to be correct, except they state, that instead of 30 shares Sallie T. Coe owns only 29 shares, and that W. H. Travers owns one share, which was formerly owned by Sallie T. Coe. But the answer of the infant stockholder, Eliza S. Gallaher, does not admit the statement of the bill to be correct and calls for proof of the same. She is one of the appellants ; and there was no proof of this statement of the bill in any of the depositions, nor do they show either the number of the shares of stock owned or by whom owned.

Our conclusion therefore is, that, if the plaintiffs were entitled to a decree in this cause dissolving this company,

selling its property and distributing the proceeds among the shareholders, as they asked in their bill, it is not as a matter of course, as they claim, but only by virtue of sec. 57 of chap. 53 of the Code, which is as follows:

"If not less than one third in interest of the stockholders of a corporation desire to wind up its affair, they may apply by bill in chancery to the Circuit Court of the county, in which the principal office or place of business is situated, or, if there be no such office or place of business in this State, to the Circuit Court of the county, in which the other stockholders or any one or more of them reside or are found, or in which the property of such corporation or any part of it may be, setting forth in the bill the grounds of their application; and the court may thereupon proceed according to the principles and usages of equity to hear the matter, and, if sufficient cause therefor be shown, to decree a dissolution of the corporation and make such orders and decrees and award such injunctions in the cause, as justice and equity may require."

It is suggested by the counsel for the appellees, that in this case the Circuit Court could possibly have no jurisdiction, because the bill on its face showed, that the plaintiffs were the owners of more than a majority of the stock, and therefore by the provision of section 56 of chap. 53 of the Code they might at their option in a general meeting of the stockholders have resolved to discontinue the business of the corporation and divide the property and assets of the corporation among the stockholders according to their several rights after first providing for the payment of the debts of the corporation.

While the plaintiffs were at liberty to pursue this mode of dissolving the corporation, they were not bound to do so, if they thought, that their interests would be rather promoted by making under the next section an application to a court of chancery for a decree dissolving the corporation; for such an application they clearly had a right to make, "as they were more than one third in interest of the stockholders." But they had not under the 57th section of chapter 53 of the Code an absolute right to demand a dissolution of the corporation, as they might have done, had they pro-

ceeded under the 56th section of the same chapter by calling a general meeting of the stockholders; for the power of the court of chancery, if proceedings are instituted under the 57th section of the same chapter, is "to make such orders and decrees, as justice may require, or to decree, *if sufficient cause be shown* therefor, a dissolution of the corporation."

It is claimed by the counsel for the appellants, that no depositions can be read in any such case except by leave of the court, when any stockholder is an infant or insane person and defended by a guardian *ad litem*, as was the case here with Eliza S. Gallaher, unless the depositions be taken in the presence of the guardian *ad litem* or on interrogatories agreed upon by him, neither of which, so far as the record shows, was done in the case. This, it is claimed, is expressly provided in section 4 of chapter 83 of the Code. It seems to me, that such a law has no application to such a cause as the one before us, the object of the bill being upon the application of one third in interest of the stockholders for sufficient cause to decree the dissolution of the corporation and sale and distribution of its property under section 57 of chapter 53 of the Code, even though one of the stockholders be an infant and represented in the cause by a guardian *ad litem*. If this law had any application to such a case, then other sections of chapter 83 of the Code would apply. As for instance the bill would have to be verified by affidavit according to the second section, and all the other real estate owned by the infant would have to be set out in the bill, and other provisions in said chapter concerning the sale of property of persons under disability would have to be observed. But to my mind it is obvious, that these and other provisions found in chapter 83 of the Code were intended to be confined to causes, where the object of the bill was in reference to the leasing or sale of the lands of persons under disability or lands held for *cestuis que trust*, as the heading of the chapter shows, and that the mere fact, that an infant was a stockholder in a corporation, would not bring within the operation of these provisions of this chapter a bill brought to dissolve such corporation and sell its property, though property, in which an infant had some interest, might as an incident in such a suit be sold as the property

of the corporation by an order of the court. Depositions taken in such a case could be considered in the appellate court, where they had been taken, and could be read in the court below, when such depositions could be considered in the appellate court, had they been taken in any other cause, where one of the appellants was an infant.

The difficulty of considering the cause on its merits is with me based on entirely different grounds. Section 57 of chapter 53 of the Code, under which this cause was instituted, as we have seen, says: "The court shall proceed according to the principles and usages of equity to hear the matter and, if sufficient cause therefor be shown, to decree a dissolution of the corporation and make such other orders and decrees as justice and equity may require." The main object of such suits is to have the property, in this suit principally real estate, of the corporation sold and the proceeds distributed among those entitled thereto. Is it not obvious, that, where real estate is thus to be sold, the party holding the legal title to such real estate, in this case the corporation sought to be dissolved, must necessarily be made one of the defendants, and that there can properly be no decree dissolving such corporation or selling the real estate, of which it holds the legal title, till it is before the court as one of the defendants? The mere fact, that the corporation is the holder of the legal title of the land sought to be sold and conveyed, on general principles makes it a necessary party to such a suit. If it were not a party, how could the purchaser of the land be invested by the court with the legal title? And surely the court should not sell the land, when it has not power to invest the purchaser with the legal title, especially when there is no difficulty in obtaining such power. Then too, if one of the main objects of a chancery-bill is to obtain a decree declaring a corporation dissolved, it would seem clear, that the corporation is a necessary party to the suit. It was so decided in *Michel* v. *Rochester*, 11 Paige 118, (42 Am. Dec. 103.) The court in that case on this subject says:

"The objections raised by the demurrers, that the corporation is a necessary party to a bill under the 38th section to declare the surrender of its corporate rights and privileges and obtain a decree of dissolution and to distribute its cor-

porate property and effects among its stockholders seems to be well taken. * * * * * * When the object of the bill is to devest the corporation itself of any of its property or of any of its corporate rights or privileges upon the ground that it has forfeited its charter or surrendered its franchises, the other defendants in the suit have a right to insist, that the corporation itself should be made a party to the suit that the decree may be binding on such a corporation and that other defendants may not be subject to further litigation with the corporation itself with relation to such matters."

This reasoning seems to me to be entirely sound and applicable to the cause before us. The Circuit Court ought therefore to have sustained the general demurrer to the plaintiffs' bill interposed by William H. Travers and Sallie T. Coe and ought to have given the plaintiffs leave to amend their bill in a reasonble time and make the Shannondale Springs Company in the county of Jefferson a defendant instead of overruling the demurrer, as it did by the decree of June 2, 1886.

But the counsel for the appellees insist, that, even if it be admitted that the Shannondale Spring Company in the county of Jefferson was a necessary party defendant, the failure to so make it, when its absence produces no prejudice to parties before the court, constitutes no fatal objection at the hearing; and Story's Equity Pleading, sec. 74, and *Whiting* v. *Bank*, 13 Pet. 6, are relied upon as sustaining the position. In the first place I can not regard said company as a mere formal party. If it were, and the bill had not been demurred to, this Court might be indisposed, or the court below might on the hearing be indisposed, to listen to the objection arising from its not having been made a party. *Wormley* v. *Wormley*, 8 Wheat. 451. But in the case before us the bill was not only demurred to, but the company was so obviously a necessary party, that the court below ought not to have heard the cause in its absence.

In *Whiting* v. *Bank*, 13 Pet. 6, all, that was decided on the question under consideration, was, that, Breckenridge being a proper party defendant, it was irregular and erroneous to entertain and pronounce the decree for the foreclosure and sale without his having been made a party defendant. But

such a decree was made and confirmed without objection. Then a bill of review was brought by certain parties, and the court held, to use its own language on page 8:

"As to the supposed error in not making Breckenridge a party to the original bill assuming that he was a proper party to the bill, still it is to be considered, that it was an objection, that ought properly to have been taken by the present parties at the hearing or upon the appeal (if any) before the appellate court. And upon a bill of review it can not properly be relied upon as a matter of error, unless it can be shown, that the non-joinder has operated an injury or mischief to rights of the present plaintiffs. No such mischief has been shown or is pretended. Breckenridge is not bound in the original decree, because he was no party thereto, and therefore his interests can not be prejudiced thereby. But, if they were, he and he alone has a right to complain and to seek redress from the court, and not the plaintiffs, who are not his representatives or interested in the vindication of his rights. Breckenridge has made no complaint and sought no redress. We think therefore, this error, if any there be, not being to the prejudice of the plaintiffs can not furnish any grounds for them to maintain the present bill; for no party to a decree can on the general principles of a court of equity claim a reversal of such decree upon a bill of review, unless he has been aggrieved by it, whatever may have been his right to insist on the error at the original hearing or on appeal.".

The case before us is no bill of review; and the proper inference to be drawn from *Whiting* v. *Bank* is, that in such a case as the one before us the appellants had a right to insist on the error, we have pointed out, at the hearing of the case or on this appeal. They have in no manner waived this right; for they demurred to the bill in the court below, and it was, as we have seen, fatally defective, because the Shannondale Springs Company was not a party defendant, and the question raised by the bill and decree asked and obtained from the court were such, as could neither be considered nor acted upon by the court in the absence of said company, which was a necessary and proper defendant.

For these reasons the Circuit Court of Jefferson county

erred in the decree rendered on June 2, 1886, in overruling the demurrer of the defendant, William H. Travers, to the bill, and in the decree rendered on February 17, 1887, in deciding, that on the pleadings and depositions then in the cause the complainants were entitled to the relief asked in their bill, and in rendering the decree which it did. These decrees must therefore be set aside, reversed and annulled; and the appellants must recover of the appellees, J. Garland Hurst and Eugene Baker, their costs in this Court expended; and this Court proceeding to render such a decree, as the court below should have rendered, must sustain the demurrers of William H. Travers and Sallie T. Coe to the bill and amended bill in this cause, because the Shannondale Springs Company in the county of Jefferson was not made a party defendant to this bill and amended bill; and this cause must be remanded to the Circuit Court of Jefferson county with instructions to give to the plaintiffs in such cause leave to amend their bill in a reasonable time, to be fixed by the court, and make the Shannondale Springs Company in the county of Jefferson defendant, and further to proceed with this cause upon the principles laid down in this opinion, and further according to the principles governing courts of equity.

REVERSED. REMANDED.