# CHARLESTON

RAINEY v. FREEPORT SMOKELESS COAL AND COKING Co.

Submitted June 17, 1905.    Decided December 5, 1905.

1. CORPORATIONS—*Dissolution—Procedure.*

  In a proceeding brought under s. 57, ch. 53, Code, for the purpose of dissolving and winding up the affairs of a corporation, it is a condition precedent to the maintenance of the suit that it be alleged and proved that the persons seeking such dissolution comprise not less than one-third in interest of the stockholders of the corporation. (p. 426.)

2. CORPORATIONS—*Dissolution—Procedure—Jurisdiction.*

  Equity has jurisdiction, at the suit of not less than one-third in interest of the stockholders of a corporation, to dissolve and wind up the affairs of the corporation upon a bill filed for that purpose, setting forth such facts as show good cause why it should be done. But where the proof fails to sustain the material allegations of the bill, it will be dismissed,   (p. 429.)

3. CORPORATIONS—*Receivers—Appointment of.*

  A stockholder, or creditor, under s. 58, ch. 53, Code, may file a bill in equity asking for the appointment of a receiver to take charge of and administer the assets of a corporation, and upon sufficient cause being shown therefor, a court should appoint such receiver; but, when so appointed, he should be discharged and the bill dismissed, unless the allegations of the bill are supported by the evidence. (p. 429.)

4. RECEIVERS—*Jurisdiction--. Special Receivers.*

  In order to give a court of equity jurisdiction for the appointment of a special receiver under s. 28, ch. 133, Code, there must be a suit pending in such court involving the property of a corporation, firm or person, and it must be made to appear in the case that there is danger of the loss or misappropriation of the property, or a material part thereof.   Such suit cannot be maintained where the basis of equity jurisdiction alone is the appointment of such receiver, but there must be equity jurisdiction, independent of the application therefor.  (p. 429.)

Appeal from Circuit Court, Barbour County.

Bill by W. W. Rainey against the Freeport Smokeless Coal & Coking Company and others.    Decree for defendants and plaintiff appeals.

*Affirmed.*

J. HOP WOODS, for appellant.

ICE & ICE and FRED O. BLUE, for appellees.

Sanders, Judge :

In a bill filed on the 21st day of June, 1902, in vacation, before the Judge of the circuit court of Barbour county, the plaintiff, W. W. Rainey, claimed that the defendant, Freeport Smokeless Coal and Coking Company, was organized on the 21st day of June, 1900, with a capital stock of $25,000, divided into two hundred and fifty shares of the par value of one hundred dollars each, of which stock Frank H. Sloan had sixty-one shares, George B. Wade sixty shares, George B. Clifton five shares, plaintiff forty-two shares, and David H. Poling and Columbus Kelley, each, forty-one shares. All of these parties, together with Alman Poling, W. T. Ice, Jr., John Murdock and Anthony Marteney, were made defendants to the bill. It was further alleged that prior to the organization of the company, the plaintiff was the equitable owner of certain tracts of land and coal in Barbour county; that, being such owner, he was solicited by the defendants, Frank H. Sloan and George B. Wade, to join with them and the defendants, J. P. Wade and George B. Clifton, and incorporate themselves into a coal and mine operating company. That, in pursuance to said solicitation, the defendant company was organized, the plaintiff transferring to it his interest in the land and coal before mentioned; that the Wades and Sloan were to advance $2,500, necessary to consummate the purchase of the property, and that the plaintiff was to receive for his interest therein, $2,500, which was to be represented by 124 shares of stock in the company, which stock was to be full paid and non-assessable. That of this stock there was issued, at plaintiff's instance, forty-one shares to Poling and a like number of shares to Kelley, of which plaintiff had since become the owner, making him the owner of 124 shares. It was further alleged that the plaintiff had been, since the organization of the company, its general manager and superintendent, and that it was indebted to him in a large sum on account of his services. The bill charged that the company's affairs were being mismanaged and its property wasted, and prayed that a receiver might be appointed to take charge of its affairs, that an injunction might be awarded restraining the persons in possession from disposing of the property, that the affairs of the company might be wound up, its debts paid, and the residue of the property,

if any, divided among the stockholders. The court awarded the injunction, as prayed, and appointed the plaintiff receiver.

The defendant company filed its answer, in which it denied that the stock of the plaintiff, Poling and Kelley, was to be full paid and non-assessable; denied that the plaintiff was the owner of 124 shares of stock, or that he was the owner of any stock, but claimed that his stock had been forfeited for the non-payment of assessments; and denied that it owed the defendant anything on account of his services as manager, but said that he had been paid all that such services were reasonably worth. In reference to the allegation in the bill that the affairs of the company were being mismanaged, and its property wasted, it was stated in the answer that not only was such a state of affairs non-existent, but that, on the contrary, after the plaintiff ceased to work for the company, its property was properly and carefully taken care of and used for its sole benefit; that the plant was in a better condition for mining purposes than ever before; that the same was not in a ruined or damaged condition, but was in an improved condition, and more valuable than it had ever been.

On the 24th day of June, 1902, notice having theretofore been given, the court dissolved the injunction, and removed Rainey as receiver. On the 11th day of November, 1903, a decree was entered, dismissing the plaintiff's bill, and from this decree he has appealed.

The plaintiff's suit is brought under section 57 of chapter 53 of the Code, 1899, which gives to stockholders of a corporation, not less than one-third in interest, the right to wind up its affairs, for cause shown. His suit being predicated upon the ownership of not less than one-third of the stock, if he has failed to establish the fact that he owns such interest, his right to maintain his suit fails, unless it can be maintained upon some other ground, which he now claims can be done.

The plaintiff claims that he is the owner of 124 shares of stock in the defendant company. In order to own this number of shares, he must establish the fact that he is the owner of the eighty-two shares owned by David H. Poling and Columbus Kelley. The evidence shows that these shares were issued to Poling and Kelley at Rainey's instance, and he says the

consideration therefor was that they had rendered him some assistance in getting up the options on the property which he transferred to the company.   On September 18, 1900, Poling and Kelley made written assignments of their stock to Frank H. Sloan, one of the defendants. Rainey claims that these assignments, while made to Sloan, were for his benefit; that Sloan was to hold the stock in trust for him, and that the payment therefor was to be taken out of his salary as general manager.   The transfer was made through William A. Wade.   Is Rainey's contention supported by the evidence?   The burden is upon him to establish this fact. The assignments speak strongly against him, and require clear evidence to overthrow them.   It is true that Poling says that Rainey negotiated the trade with him, and that he would not have assigned his stock had he known it was to be used against Rainey, and that Kelley says he does not think, after acquiring the stock in the way in which he did, that he could have sold it to any one who would have used it against Rainey, yet the assignments are plain and unambiguous, the plaintiff is nowhere mentioned or referred to in them, and both Wade and Sloan deny that there was any agreement or understanding by which the stock was to be held for Rainey. It is not claimed by Rainey that he ever paid one cent on the stock, and what the consideration for it was, and why it was to be assigned for his benefit, does not appear.   There is copied into the record a letter written by Rainey to Wm. A. Wade, in which he says: "I have finally got Poling and Kelley to agree to accept your offer of $150 each for their stock and interest in the F. S. C. & C. Co."   This letter, if it shows anything, certainly does not tend to bear out the plaintiff's contention that the stock was being acquired for his benefit, but it goes strongly to show that the stock was not purchased for plaintiff, nor by him.   We think it clearly appears that the plaintiff has not shown himself to be the owner of the Poling and Kelley stock.

It is claimed on behalf of the company that the stock of the appellant has been, by a by-law adopted by the stockholders, and resolutions passed by the board of directors in pursuance thereto, forfeited for non-payment of assessments due thereon, while the appellant claims that from the inception of the company it was agreed and understood, by all the parties in in-

terest, that his stock, and that of Poling and Kelley, was to be full paid and non-assessable. This contention is not borne out by the evidence. At the first meeting of the stockholders, held in Philippi, a resolution was passed, authorizing the board of directors to make an assessment on the stock. Rainey was not present at this meeting, but his proxy was held by Wm. A. Wade, who voted Rainey's stock in favor of this resolution. Besides, in the assignments made by Poling and Kelley to Sloan, it is provided that the "shares of stock are sold, transferred and assigned absolutely, and the said Frank H. Sloan, or his assigns, is to pay any and all of the installments, or assessments, that may now be due or may hereafter be assessed on the said 41 shares of stock by the Board of Directors of the said Freeport Smokeless Coal and Coking Company." If the stock was full paid and non-assessable, why provide, in making assignments of it, that the assignee should pay installments and assessments? Kelley and Poling were present at the first meeting of the stockholders, at which the resolution providing for assessments was passed, but they do not claim that they made any objection to its passage. Again, the plaintiff, in his testimony, claims that there was a written agreement to the effect that the stock of himself, Poling and Kelley, was to be non-assessable, and that such agreement was left with the attorney for the company. He states, in his examination in chief, that the parties to the agreement were himself, Poling, Kelley, Wm. A. Wade, and possibly, Sloan. On cross-examination, he states that the parties to the agreement were Wm. A. Wade, Frank H. Sloan, and himself. Wm. A. Wade and Frank H. Sloan, in their testimony, deny positively that any such agreement was ever made and signed, and these witnesses, and George B. Wade and George B. Clifton, state that there was no agreement, either before the organization of the company, or afterwards, that the stock was to be non-assessable. The allegation as to the non-assessability of this stock being denied by the answer, the burden was upon the plaintiff to establish it, and not only has he failed to do so, but the preponderance of the testimony, on this point, is clearly against him.

As to whether or not the provisions of sections 31, 32 and 33, of chapter 52 of the Code, providing for the forfeiture of

stock for the non-payment of assessments thereon, have been, in this instance, complied with, it is not necessary to determine, inasmuch as we hold that Rainey is not the owner of one-third of the stock, and, therefore, not entitled to maintain his suit under the theory first advanced and relied upon, unless we should hold that, under another section, he is entitled to relief.

It is insisted on behalf of the appellant that even if it should be held that he is not entitled under section 57 of chapter 53 of the Code, to maintain his suit, that he is entitled under section 28 of chapter 133, as a stockholder, owning forty-two shares, to an accounting, under the allegations of his bill to the effect that the corporation is being mismanaged, and that its property is being purloined, wasted, lost and mislaid by the negligence and passive permission of the company. It is true that the bill alleges these facts, and the further fact that the plaintiff had made application, through the officers of the company, to institute, if necessary, such legal proceedings as were proper for the payment of its debts, winding up its affairs, dissolving its corporate existence, and dividing its surplus, if any, after the payment of its debts, among its stockholders, but that the company and its officers had refused to do so. Section 28 of chapter 133 provides that a court of equity may, in any proper case pending therein, in which the property of a corporation is involved, and there is danger of the loss or misappropriation of the same, or a material part thereof, appoint a special receiver of such property, or of the rents, issues and profits, or both. This section is designed to give to a court of equity power to appoint a receiver in any case pending in such court, in order to preserve the subject matter of the litigation until the suit is determined. In order to have the appointment of a receiver under its provisions, there must be a separate and distinct ground of equity jurisdiction—a pending suit. *Grantham* v. *Lucas, Trustee* et al., 15 W. Va., 425; *Beard* v. *Arbuckle*, 19 W. Va., 145; *McCandless* v. *Warner*, 26 W. Va., 754. In this case, the plaintiff is not entitled to the appointment of a receiver, on the ground that he is a creditor of the corporation, because he has an adequate remedy at law for the collection of his debt. A receiver should never be appointed until the legal remedy is exhausted. "Having already shown that the aid

of a receiver is extended only in behalf of creditors who have fully exhausted their remedy at law, it follows, necessarily; that the jurisdiction will not be exercised in favor of mere general creditors whose rights rest only in contract, and are not yet reduced to judgment, and who have acquired no lien upon the property of the debtor." High on Receivers, sec. 406.

In this case the appointment of a receiver is not sought as an incident to the main object of the litigation, for the purpose of protecting the property of the corporation, but is sought for the purpose of winding up its affairs, and is the basis for equity jurisdiction. If, under the allegations of his bill, the plaintiff sets forth such good cause required by statute as to entitle him to relief, his case would come within the provisions of section 58 of chapter 53, Code: "When a corporation expires or is dissolved or before its expiration or dissolution, upon sufficient cause being shown therefor, such court as is mentioned in the preceding section, may on application of a creditor or stockholder, appoint one or more persons to be receivers to take charge of and administer its assets," etc. *Swing* v. *Bentley & Gerwig Furniture Co.*, 45 W. Va. 283; *Rathbone* v. *Gas Co.*, 31 W. Va. 796; *Crumlish* v. *R. R. Co.*, 28 W. Va. 624. But even if the allegations of the bill show such good cause as is contemplated by the provisions of this section, still, in order to entitle the plaintiff to relief, the allegations must be proved. These allegations are denied by the answer, and the proof taken wholly fails to substantiate them. On the contrary, it is shown, by a clear preponderence of the testimony, that the affairs of the company, since the appellant ceased to work for it, have been managed in a successful, businesslike manner; that the output of the plant has been increased, and that it is now a solvent and going concern.

Inasmuch as we hold that the plaintiff is not entitled to relief under the provisions of section 58 of chapter 53, we deem it unnecessary to decide, whether or not the forty-two shares of stock, claimed to be owned by him, have been legally declared forfeited by the corporation.

The appellant excepted to that part of the depositions taken on behalf of the appellee company which purports to state what the proceedings of the stockholders and directors

meetings of the defendant company were, for the reason that the official record, properly certified, is the only proper evidence thereof, and the contents thereof cannot be testified to by witnesses, and cites the case of *Roe* v. *Town of Philippi*, 45 W. Va. 785, in support of his exception. That case has reference to the manner of proving the records of a municipal, and not of a private, corporation, and is not applicable here. In this case the records of the defendant company were introduced by the secretary of the defendant, who had charge of them, and who wrote the minutes of the meetings. The secretary does not attempt to state what the proceedings of the meetings were, but he identifies and examines the resolutions introduced as being the ones which appear upon the records of the defendant company, kept by him. This was entirely proper. In the case of *C. & O. Ry. Co.* v. *Trail, et al.*, 57 W. Va. 641, it is said: "When the controversy is between stockholders, concerning their interests in the corporation, and involves the consideration of the acts of the corporation as affecting directly its status and indirectly their interests, the records and books are admissible if authenticated by showing that they are the records and books of the corporation and have been regularly kept as such. This is done by calling as a witness the secretary or other recording officer, if he can be had."

For the foregoing reasons, we see no error in the decree of the circuit court, and the same is affirmed.

*Affirmed.*