# CHARLESTON

## LAMP *v.* HOMESTEAD BUILDING ASSOCIATION.

### Submitted September 15, 1906.   Decided April 17, 1907.

1. TRUSTS—*Removal of Trustee—Equity*.

   The power of courts of equity to remove a trustee on sufficient cause is well settled.   (p. 62 )

2. SAME—*Discretion of Court*.

   And what constitutes a sufficient reason for removing a trustee is a matter peculiarly within the discretion of the court, which should be guided by considerations of the welfare of the beneficiaries and of the trust estate.   (p. 62.)

3. SAME.

   The question whether or not a receiver will be appointed in a case is addressed to the sound discretion of the court under all the circumstances, and this discretion when exercised will not be interfered with on appeal except where the discretion has been manifestly abused.   (p. 63.)

4. BUILDING AND LOAN ASSOCIATION—*Receivers—Appointment*.

   A case in which the circuit court was justified in appointing a special receiver to take charge of and administer the assets of a defendant building and loan association.   (p. 65.)

(MILLER, JUDGE, Absent.)

Appeal from Circuit Court, Wood County.

Action by J. A. Lamp and others against the Homestead Building Association and others.   From a decree appointing a special receiver of the defendant the Homestead Building Association, the Commercial Banking & Trust Company appeals.

*Affirmed.*

V. B. ARCHER and DORR CASTO, for appellant.

A. G. PATTON, F. P. MOATS and MERRICK & SMITH, for appellees.

MCWHORTER, JUDGE:

The Homestead Building Association was organized in the year 1874 and continued to do business until the first of the year 1905.   A meeting of the stockholders was called for

the 9th of January, 1905, at which meeting a report of the receipts and disbursements from March 4, 1904 to December 31, 1904, was read by W. M. Straus, treasurer; a communication from Robert Alexander and J. H. Fischer was read and ordered to be filed; a committee consisting of E. W. Warnick and A. D. Ireland was appointed to audit the accounts of the association and to make a report of the assets and liabilities thereof at a meeting to be held on February 6, 1905, to which time the meeting adjourned. And on February 6, 1905, the stockholders adopted a resolution to discontinue business and surrender its charter and corporate franchises. They also adopted a resolution appointing the Commercial Banking & Trust Company trustee for said association for the purpose of winding up its affairs " under the orders and directions of the Board of Directors now in office and who are continued for the purpose shall proceed to convert the property, choses in action and all assets of the association into sufficient cash to pay off and do pay off and discharge all its debts, liabilities and obligations."

At the August rules, 1905, J. H. Lamp and twelve other stockholders, suing for themselves and all other stockholders of the said building association, filed their bill in the circuit court of Wood county against the said Homestead Building Association, The Commercial Banking & Trust Company, a corporation, Edward McCreary, J. L. Buckley, W. M. Straus, Abram Smith, W. W. Van Winkle and the other directors of said corporation, J. Henry Fischer, late treasurer, and Robert Alexander, late secretary, alleging that for the period of about twenty years from its organization the association was exceedingly popular and profitable ; that in the zenith of its prosperity, about the year 1895, a statement of its condition by its officers and directors represented it to have assets in excess of $400,000, stock subscribed to the extent of about 7000 shares and individual stockholders to the number of almost 1000. That beginning in the year 1898 and becoming more definite and marked as time elapsed the business of the association began to decline, the embarrassments of the association increased and its difficulties multiplied until at the beginning of the year 1904 the association practically suspended business although

its organization was maintained and its officers employed; that about the first of the year 1904 its treasurer, J. Henry Fischer, absented himself from the office of the association and never performed any duties as treasurer or director from that time, the excuse offered for his absence was that he was sick; that Fischer was reputed to be a man of wealth owning large properties and holdings in local enterprises and had been a director and treasurer of the association practically from its organization. That sometime in the fall of 1904 Robert Alexander, secretary of the association, absented himself from its office and remained at some other place inaccessible to the stockholders, and that the office of the association was deserted except for the presence of George H. Gordon, its president, who had desk room there but who denied all knowledge of the affairs of the association; alleging negligence on the part of the officers and directors of said association and their refusal to institute proceedings on the bonds of the treasurer, the statute of limitation on which was about to run, although said officers and directors as well as the trustee had been requested to bring such suit; that several of the directors were sureties on the bond of said Fischer whose shortage was shown to be from $69,000 to $72,000. That the resolution dissolving the association and appointing the Commercial Banking & Trust Company trustee was adopted under the connivance of the officers and directors of the association who had full knowledge of its affairs, which knowledge they suppressed and kept from the stockholders and gave false assurances in order to induce the adoption of the resolution; that if the stockholders had been in possession of such knowledge they would not have adopted the resolution; that many of the former directors who were large stockholders by reason of the knowledge acquired from their relation to the association were enabled to and did withdraw their stock with large earnings which had never been earned, thus to escape loss; and that although six months had elapsed since the appointment of the said trustee nothing had been done to hold the securities liable on the defaulting bonds of the former treasurer; and praying for the removal of the officers and directors of the association and of the trustee and the appointment of a special receiver to wind up the affairs of the association and to require from

the officers and directors of the association a full disclosure of all its affairs.

At the October rules, 1905, the plaintiffs together with other stockholders filed their amended bill making parties thereto other stockholders and former directors who had withdrawn their stock with knowledge of the manner in which the business of the association had been conducted, alleging as an amendment to the original bill that the stockholders meeting of February 6, 1905, was procured and preconcerted in fraud of the rights of the stockholders; that the defaulting officers and negligent directors conspired with Edward McCreary and other officers and agents of the Commercial Banking & Trust Company for the purpose of securing control of the meeting and thus secure a friendly administration for the defaulting officers, negligent directors and sureties on the bond of the treasurer; that these parties had full knowledge of the conditions of the association before the meeting was held and that by misrepsentations, colcealment and fraud they secured proxies of enough stock to control the meeting; that before the meeting they conspired together and arranged the plan of action the effect of which would be to lull the stockholders into a sense of security and thus succeed in adopting a resolution which apparently put the affairs of the association into the hands of disinterested parties for administration but as a matter of fact not disturbing or divesting the authority, management and control theretofore exercised by the directors; that by this resolution the directors and trustees were placed beyond the reach of the stockholders as such and could not be removed nor displaced by them; that the assets of the association were depreciating, arrearages increasing, real estate being sold for taxes and actions upon obligations to the association being barred by the statute of limitation; that the interests of the stockholders were being ignored and that the conduct of the trustee and of the directors was such as would best protect the defaulting officers, negligent directors and sureties on the bond of the defaulting treasurer; and again praying for the removal of the officers and directors and the trustee of said association and for the appointment of a receiver to wind up the affairs of the association and with direction to institute appropriate suits or actions against the

sureties on the bonds of J. Henry Fischer, treasurer, for all sums that they might be liable for and against all directors of said association by reason of mismanagement and negligence, and for decrees against the officers and directors of said association and against all former officers and directors for all losses or damages incurred or sustained by reason of the misappropriation of the funds of the association, or by the negligence, mismanagement or illegal acts of them or any of them; for a marshalling of the assets of the association and a convention of the stockholders and creditors and for an ascertaining of the rights, standing and priorities and for the recovery from the assets of the association the sums to which the plaintiffs may be entitled respectively and from the officers, directors and sureties on said bonds; and for general relief.

Demurrers were filed to the bill and amended bill by certain of the defendants. The Homestead Building Association and the directors filed their joint and several answers and other defendants filed their answers, to all of which answers the plaintiffs replied generally. Affidavits were filed by the plaintiffs as well as by the defendants. Notice was given by the plaintiffs that on the 28th day of September, 1905, they would move for the appointment of a special receiver. The motion for the appointment of a receiver came on to be heard on the 24th of October, 1905, upon the original and amended bills, upon the affidavits filed for and in opposition thereto, upon the separate demurrer of the various defendants in which the plaintiffs joined, upon the joint and separate answers of various defendants and general replication thereto, when the court overruled the demurrers and each of them in so far only as they relate to matters arising on this motion; and the court, being of the opinion from the pleadings and proofs filed that a proper case was made for the appointment of a special receiver, appointed the Union Trust & Deposit Company, authorizing it to bring such actions at law or suits in equity as might be necessary either for the purpose of the proper administration of the assets of said association or for the purpose of obtaining and securing possession and control thereof, and with authority to do all things necessary to the winding up of the affairs of the association. From which decree the Commercial Banking &

Trust Company, trustee, appealed, assigning many causes
of error.   The cause was not heard upon its merits and
the only matter for this Court to consider is the error assigned
in appointing a special receiver, the case being heard only
upon that motion.   The demurrers were overruled only so
far as the matters arising upon the motion for the appoint-
ment of a receiver were involved.

It is contended by appellant that the amended bill prays for
different relief from that of the original bill and that there
is a new distinctive cause of action attempted to be set up
in the amended bill.   This does not appear to be the case.   It
is true the amended bill brings in new parties who had ceased
to be members of the association who were formerly stock-
holders and directors and, as is alleged, had taken advantage
of the knowledge their position gave them as directors
whereby they were enabled to discover impending danger
and withdraw their stock with its apparent earnings from
the treasury of the association well knowing its conditions,
thereby taking advantage of their knowledge in their own
interest to the detriment of the stockholders who were not
favored with such knowledge.   And the .purpose of making
such persons parties was simply carrying out the purposes
of the original bill that such new defendants might be com-
pelled to refund such moneys as had been so improperly re-
ceived by them from the treasury.   The purpose and alle-
gations of the amended bill are in line with those of the
original bill.   The appellant has no authority, whatever,
conferred upon it except the resolution appointing it a trus-
tee for said association for the purpose of winding up its af-
fairs "and under the orders and direction of the Board of
Directors now in office and who are continued for the pur-
pose shall proceed to convert the property, choses in action
and all assets of the Association into sufficient cash to pay
off and do pay off and discharge all its debts, liabilities and
obligations."   No assignment appears to have been made to
the said trustee, and by the terms of the resolutions its powers
are limited to the will of the board of directors without whose
actions it can do nothing.   It has no power to bring suit or
an action upon the treasurer's bond without the direction of
the board of directors.

It is insisted by appellant that this is a proceeding under

section 2284, Code 1906, to wind up the affairs of the association and cites' *Law* v. *Rich*, 47 W. Va. 634, (Syl. Pts. 2 and 3); when in fact it is a proceeding under section 2286 by a part of the stockholders. In *Law* v. *Rich*, the case cited, at page 637 it is said: "The bill does not state the facts clearly and distinctly constituting actual dissolution. If it did, there would be jurisdiction for one creditor to ask the appointment of a receiver to take charge of and administer the assets of the corporation under Code, chapter 53, section 58" (section 2286, Code 1906). In case at bar by resolution of the stockholders the association had been dissolved and the charter and franchises surrendered. This entitled any creditor or stockholder, on sufficient cause being shown therefor, to apply to the court under section 2286 for the appointment of a receiver to take charge of and administer its assets. In *May* v. *May*, 167 U. S. 310, it is held: "The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed." · See also 1st Perry on Trusts, sections 275-276. 28 A. & E. E. L. 977: "The power of courts of equity to remove a trustee on sufficient cause is undisputed, and like power has very generally been conferred on other courts by statute." Citing cases from Alabama, Arkansas, California, Delaware, Illinois, Indiana, Virginia and other states. And on page 978, same volume: "What constitutes a sufficient reason for removing a trustee is a matter peculiarly within the discretion of the court, which should be guided by considerations of the welfare of the beneficiaries and of the trust estate." And page 979, same volume: "Even though there be no actual fraud, yet if the trustee act for his own benefit instead of for the benefit of the *cestuis que trustent*, or if he occupy antagonistic positions, as where he is president of a corporation in which the trust estate is a stockholder, or partner in a bank in which he deposited the trust funds, he may be removed." Many other grounds are stated as sufficient to cause removal. In speaking of the relation between the trustee and the *cestui que trust*, Mr. Hogg in his Equity Principles at section 174, says: "Here the utmost good faith is exacted. As to this relation, it can be safely said that the trustee is bound not to do anything which can place him in a position in-

consistent with the interests of the beneficiary, or which has a tendency to interfere with his duty in discharging the obligations imposed by the trust he has taken upon himself."

It is contended by appellant that while under the provisions of section 2286 the court might take jurisdiction of a suit brought by stockholders for specific relief against the directors in office, who under the provisions of section 2287 are authorized to exercise certain influences and to perform certain duties, yet in such suit the court, under provisions of section 2286, could have entered a decree protecting the creditors or stockholders from any act of the directors or officers without exercise of the arbitrary power of the appointment of a receiver. This may be true, it may be said that the court could have divested the directors of all power to direct the trustee and could have ordered the trustee to proceed under the order of the court to wind up the affairs of the association as was done in the case of *Weigand* v. *Supply Co.*, 44 W. Va. 183. This, however, would have been a virtual appointment of the trustee as the court's receiver, and it resolved itself into the question of choice in the mind of the court between the two companies proposed for receiver and which, under the pleadings and proofs and the circumstances of the case, it was for the court to determine: first, whether in the discretion of the court a receiver should be appointed; and second, if one should be appointed, which of the two proposed under all the circumstances as disclosed by the record would best subserve the interests of the stockholders and all parties interested. Section 6823, 5 Thomp. Cor., says: "Unless there is a statute giving the right to a receiver in a given state of facts, no one can demand the appointment of a receiver *ex debito justitiae;* but the question whether or not a receiver will be appointed in a given case is addressed to the sound discretion of the chancellor, under all the circumstances. The discretionary power possessed by courts of equity of appointing receivers or refusing application for such appointment will not be interfered with on appeal except in cases where the discretion has been manifestly abused; this being the general rule as to the appellate review of discretionary action." Section 2286, Code 1906, provides for the appointment of a receiver upon sufficient

cause shown therefor "when the corporation expires or is dissolved or before its expiration or dissolution," upon the application of a creditor or stockholder.

It is provided under the resolution of the board of directors that the trustee thereby appointed should act under the orders and directions of the board of directors. It is disclosed that two of those directors were sureties on the bond of the defaulting treasurer, one of them having been a business partner of the said former treasurer, and that still another one of them is counsel in this case for the defaulting treasurer. It further appears that the executive officer of the Commercial Banking & Trust Company was also on the bond of the defaulting treasurer and liable for his defalcation. It further appears that while the trustee had been appointed by said resolution six months before the institution of this suit it had failed to bring any action upon the bond or bonds; and further that the said executive officer, who is a party to this suit, filed his answer in which he claims the benefit of the statute of limitation.

The record discloses the most inexcusable negligence on the part of the board of directors of the Homestead Building Association. For six years prior to the time of the appointment of the trustee by the resolution no books of account had been kept or reports made showing the condition of the business of the association and the affairs of the association were in such condition that two expert accountants had not been able, from the time they were employed in January 1905 up to the time of the institution of this suit, to get the affairs of the association into an intelligible condition. Section 2282, Code 1906, provides: "The board of directors shall cause regular and correct books of account to be kept, and to be settled and balanced once at least every six months." The books of this institution had not been so settled and balanced in six years. Said board of directors had continued the treasurer, Fischer, in office for a number of years after it was discovered that he was a defaulter, and his defalcation continued to increase from some $10,000 when first discovered until it reached the sum of about $72,000. With three members of the directors interested in favor of the old treasurer—two of them as sureties on his bonds, another as his attorney in this case—and the executive officer

of the banking and trust company, trustee, also surety on said bonds; with the failure of the directors to require the proper books and accounts to be kept and to save the treasurer's bond from loss to the association by enforcing collection thereof against the sureties thereon—accounted for only by the fact that they were under some influence in conflict with the interests of the stockholders which prevented their taking proper action in the line of their duty—and it appearing that there was a great danger of the loss thereof by reason of the running of the statute of limitation, if, indeed, it was not already barred through their negligence, and the trustee taking no steps to enforce the liability thereon, the court was well warranted in taking the action it did.   While it is true there is a sufficient number of the board of directors to overrule those having a direct or indirect interest which would be in conflict with proper action in the case, yet the negligence of the board for the space of at least six years would throw doubt upon the good faith in executing the duties of their office and it would seem clear that an influence had been brought to bear to prevent proper action on their part, and it would seem that this influence may have extended to the trustee itself,   While we would by no means cast reflections upon the integrity or good faith of the trustee, the Commercial Banking & Trust Company, we are unable to see that the circuit court, under the facts and circumstances disclosed in the case, has in any way abused its discretion or has not exercised a sound judicial discretion in the premises and therefore the decree must be affirmed.

*Affirmed.*