Earl A. Hall

*v.*

Colin McLuckey, *et al.*

(No. 10230)

Submitted April 25, 1950. Decided June 27, 1950.

*J. W. Maxwell* and *Kermit A. Locke,* for appellants.

*Scherer, Bowers & File* and *Clay S. Crouse,* for appellee.

LOVINS, PRESIDENT:

This suit instituted in the Circuit Court of Raleigh County by Earl A. Hall against Colin McLuckey and Beckley Music and Electric Company, a corporation, has for its purposes the appointment of a special receiver of the property and records of the corporation, the award of an injunction inhibiting McLuckey from managing the business of the corporation, an audit of the books of the corporation, and ultimately its dissolution, a sale of its assets and distribution of the proceeds of such sale.

Having overruled a demurrer to the bill of complaint, the trial court entered a decree appointing a special receiver of the property and records of the corporation, awarding an injunction, without bond, inhibiting Mc-Luckey from managing the business of the corporation, and appointing a person to audit the books of the corporation under the supervision of the court. This Court granted an appeal.

No proof was offered, unless two affidavits filed by plaintiff in support of his motion for the appointment of a special receiver and the award of an injunction be so characterized. Therefore, we must rely, in the main, on the bill of complaint and the joint and separate answer of defendants. The allegations disclosed by those pleadings may be classified as those admitted and those denied. For the purposes of this opinion the events narrated in the two affidavits may be treated as having been shown by *prima facie* proof.

The bill of complaint alleges that prior to October 5, 1944, plaintiff was engaged in the business of selling merchandise through a corporation known as the Beckley Music Store, located at No. 110 South Fayette Street, Beckley. Plaintiff being ill, it became necessary for him to discontinue the management of the business. Having such object in view, he made an agreement with Mc-

Luckey, whereby McLuckey assumed the active management of the business; and a new corporation was organized known as the Beckley Music and Electric Company, hereinafter referred to as the "corporation". It was also agreed that plaintiff and McLuckey would invest equal amounts of money, or the equivalent in the business of the corporation. A corporate charter was obtained, a copy of which is filed with the bill of complaint as an exhibit. The charter conferred wide powers on the corporation, many of which are unnecessary to notice in this opinion. Among these powers conferred was the power "to purchase, hold, sell and transfer shares of its own capital stock, bonds and other obligations of this corporation from time to time to such extent and in such manner and upon such terms as its board of directors may determine."

The authorized capital of the corporation is fifty thousand dollars, divided into five hundred shares of the par value of one hundred dollars each. The corporation commenced business with a subscription of fifteen shares of its capital stock, the plaintiff holding seven shares, McLuckey seven shares, and L. L. Scherer one share. The one share subscribed by L. L. Scherer was never issued, or if issued was endorsed and returned to the corporation. After the issuance of the charter the new corporation commenced business under the management of McLuckey, who, as its president, issued and delivered to plaintiff a certificate for one hundred four shares of its capital stock. Since October 5, 1944, McLuckey has been the active manager of the corporation. However, he has recently become ill, and probably has not engaged in its active management during the pendency of this suit.

Plaintiff made demand on McLuckey on June 14, 1949, for permission to examine the records and papers of the corporation, including the bylaws and minutes of all meetings of stockholders and directors, the stock certificate book, stock transfer ledger, annual audit for each year during its existence, copies of Federal income tax returns for each year, the open accounts of plaintiff and

defendant with said corporation, and all other records necessary to a determination of its financial status.

McLuckey not having complied with the demand, on June 23, 1949, plaintiff's attorney advised McLuckey that such action as was necessary would be taken. This suit followed.

Momentarily disregarding the effect of defendants' demurrer to the bill of complaint, the following allegations of the bill of complaint are effectively denied by defendants' joint and separate answer: That plaintiff and defendant at the time of or prior to the formation of the corporation agreed to acquire, hold and continue to hold the capital stock of the corporation in equal shares, subject to the issuance of one share to a third person to meet the legal requirement relative to the minimum number of stockholders; that the one share so issued should be reassigned to the corporation after its formation; that the business would be carried on at the same location as the old business had been conducted; that McLuckey would be paid a salary of three hundred dollars a month as manager; that the net profits of the corporation would be paid out in dividends in equal amounts to plaintiff and McLuckey; that McLuckey refused plaintiff's request to call stockholders' meetings to organize the corporation and elect officers; that McLuckey has refused to meet with plaintiff for the purpose of holding stockholders' meetings and considering the business of the corporation; and that McLuckey has refused to furnish plaintiff with copies of the audits or to give information with reference to the corporation's business.

Plaintiff avers that he has not been paid any of the net profits of the business, and upon information and belief charges that McLuckey has managed the business of the corporation for his own benefit and converted the profits thereof to his own use to the prejudice of plaintiff's rights, which averments are denied. Defendants admit in their answer that no dividends have been paid, and assert that the net income from the corporation's business has been

used for the benefit of the corporation and the extension of its business.

Plaintiff further charges, all of such charges being denied by defendants, that McLuckey has possession of the books and records of the corporation, and has refused to allow plaintiff to inspect the same; that plaintiff is in danger of losing his rightful interest; that McLuckey has exceeded his authority as manager; and that he has acted contrary to the law of West Virginia.

Plaintiff further avers that McLuckey has refused to enter into a voluntary dissolution of the corporation, and upon information and belief plaintiff alleges that in order to maintain the issues on his part properly it is necessary for him to have discovery of the following: (a) If the defendant corporation has adopted bylaws, and if so the provisions thereof; (b) if any meetings of stockholders and directors of said corporation have been held, the actions taken at said meetings; (c) the amount of capital stock issued and to whom; (d) a disclosure of the annual audits of the corporation's business, since its incorporation and the present status of such business; (e) an itemized statement of the purchases from said corporation made by McLuckey; (f) the dates, amounts and purposes of all withdrawals from the funds of said corporation by the defendant McLuckey; and (g) such other information as may be necessary with reference to the affairs of the corporation.

Plaintiff prays that defendant McLuckey be enjoined from managing the business of the corporation and from applying funds of the corporation to his own use; that a special receiver of the property and records of the corporation be appointed to operate the business under the direction of the court; that an audit be made of the business of the corporation; and for a decretal judgment against McLuckey, if any sum should appear to be due from him; and that the corporation be dissolved and its assets sold and proper disposition thereof be made.

The defendants demurred to the bill of complaint upon

the grounds that the allegations of the bill were insufficient to warrant a court of equity taking jurisdiction of the cause; that its allegations of fact are too indefinite and uncertain; that plaintiff had an adequate and complete remedy at law for the vindication of his rights; that the bill of complaint disclosed that necessary persons were not made parties to the suit; and that a court of equity had no jurisdiction to appoint a special receiver nor to compel discovery as prayed. The demurrer was overruled.

In addition to traversing the allegations of plaintiff's bill, as hereinabove noted, defendants in their joint and separate answer allege that the assets of the Beckley Music Store transferred to the corporation were greatly depleted at the time of the transfer; that the only valuable asset acquired by the corporation was the location of the business; that McLuckey paid plaintiff five thousand dollars for a one-half interest in the business; that it was the distinct understanding that McLuckey should have a "free hand" in the management of the business; and that it was contemplated that the stock of the corporation was to be sold as business necessities required in order to raise capital to continue the business; and emphatically denies that there was any agreement relative to the acquisition and holding of the stock in equal share by plaintiff and McLuckey, or any agreement relative to the salary to be paid to McLuckey. On the contrary the answer alleges that McLuckey's salary would be commensurate with the value of his services and the success of the business. Defendants further aver that the shares of capital stock of the corporation were to be sold to such persons as McLuckey and the board of directors might deem proper, and that some of the capital stock of the corporation had been disposed of to other persons for cash. It appears from said answer that McLuckey has been elected president of the corporation by the board of directors.

The defendants also allege that plaintiff has been requested to purchase additional shares of the capital stock of the corporation, but that he has refused to do so or to

lend aid to the corporation; that plaintiff insisted that he be put upon a salary; that McLuckey had offered to employ plaintiff in the business of the corporation, but plaintiff had refused such employment and insisted upon a salary as a "gratuity or bonus".

The joint and separate answer further avers that the corporation had been legally organized; that the business was actively and successfully managed by McLuckey; that valuable assets had been accumulated; that stockholders' meetings had been held from time to time; that plaintiff had refused to attend meetings of the stockholders, although he knew the same were being held and was present at the corporation's place of business when such meetings were to be held; that notwithstanding such opportunity and knowledge plantiff has absented himself from said meetings and refused to participate therein. It is also alleged by defendant that plaintiff has had complete access to the records of the corporation; that defendant McLuckey had discussed with plaintiff the affairs of the corporation, and had requested plaintiff actively to engage in its management, but in each instance plaintiff had refused to do so.

McLuckey explains his failure to comply with the notice served on him on June 14, 1949, by alleging that he was ill, and that because of said illness he had requested plaintiff to manage the business of the corporation during his illness. The answer of the defendants further states that it was unnecessary to make formal demand upon them for information concerning the affairs of the corporation, and points out that the corporate records and other papers pertaining to its business are in the possession of the corporation's secretary, Cecil W. Lovell.

The answer denies the right of the plaintiff to an injunction and the appointment of a special receiver, it being alleged that the corporation is solvent and that its business is being conducted in a legal and successful manner.

After the demurrer had been overruled, plaintiff moved for the appointment of a special receiver and an injunction, filing in support of such motion two affidavits. The substance of the two affidavits is that the capital stock of the corporation has been issued as follows: Cecil W. Lovell 10 shares; Edith Gamble Basham 10 shares; Colin McLuckey 164 shares; Earl A. Hall 104 shares; and that 10 shares of the capital stock of the corporation have been issued to L. L. Scherer, but have not been delivered. It is also shown by said affidavit that bylaws have been adopted, excerpts from said bylaws relative to the board of directors, their duties, and time of meetings being set out in the affidavit. Excerpts from the minutes of meetings of stockholders held on July 6, 1945, and July 8, 1948, and a meeting of the board of directors of the corporation held on July 8, 1946, disclose that McLuckey's salary was to be $416.47 a month "until such time as increased business warrants an increase in salary"; that McLuckey was commended and his salary increased to $6,200.00 a year, effective July 1, 1947; and that on July 5, 1948, McLuckey's salary was increased to $10,000.00 a year, conditioned upon an anticipated gross business of two hundred thousand dollars for the ensuing year. The salary of the acting secretary and treasurer was fixed at three hundred dollars a year.

The affidavits state, upon information and belief, that McLuckey is ill, that such illness and the treatment attendant thereon have disabled him from managing the business of the corporation and that McLuckey has refused to call stockholders' and directors' meetings.

Upon the foregoing record, which has been stated in detail, the trial court appointed John McLuckey, hereinafter designated "receiver", special receiver of the business and records of the corporation; authorized said receiver to operate the business and required him to give bond in the sum of five thousand dollars. In the same decree defendant McLuckey was enjoined "from further managing said corporation or taking any part in the management thereof from and after the time the said receiver

604

takes charge of said business until the further order of this court." No injunction bond was required nor was any finding made that it was improper to require such bond. It was also decreed that an audit of the books of the corporation from its organization to the date the receiver took charge should be made by a person named in the decree. The auditor so designated was required to ascertain practically the same facts, the discovery of which was prayed for in plaintiff's bill of complaint.

Defendants assign a number of errors. However, we think the following are sufficient to dispose of all questions herein presented: (1) Does plaintiff have the right to maintain this suit; (2) is the bill of complaint sufficient; (3) is proof sufficient to warrant (a) the appointment of a receiver, (b) the award of an injunction, and (c) an audit of the books of the corporation under the supervision of the court; and (4) was it error to grant the injunction without requiring bond?

The relief granted by the trial court, as well as the ultimate relief prayed for in the bill of complaint are drastic in nature. This Court in considering similar questions in all instances has safeguarded the rights of management and disposition of private property, and except in plain cases has refused to interfere with such management and disposition. See *Ruffner* v. *Mairs,* 33 W. Va. 655, 11 S. E. 5. The general tenor and effect of pertinent statutes seem to have the same purpose.

Under statutory provisions the plaintiff has the right to maintain a suit for dissolution of the corporation for sufficient cause, since he owns more than one-fifth of the authorized capital stock. "If not less than one-fifth in interest of the stockholders of a corporation desire to wind up its affairs, they may apply by bill in chancery to the circuit court of the county in which the principal office or place of business of such corporation is situated * * * setting forth in the bill the grounds of their application, and the court may thereupon proceed, according to the practices and usages of equity, to hear the matter, and if

sufficient cause therefor be shown, to decree a dissolution of the corporation, and make such orders and decrees and award such injunctions in the cause as justice and equity may require." Code, 31-1-81. *Hurst* v. *Coe*, 30 W. Va. 158, 3 S. E. 564; *Williams* v. *Croft Notion Co.*, 82 W. Va. 549, 96 S. E. 929. It is further provided in Code, 31-1-81, that in such suit defendants who hold a majority of the shares of the outstanding stock of the corporation shall have the right to avoid the appointment of a receiver or the dissolution of such corporation "by purchasing the shares of stock owned by the plaintiff at their fair cash value." Other provisions follow in the same statute relative to the method of ascertaining such value. We do not pass on the question whether it was necessary at the present stage of this suit that the court accord defendants such right since the dissolution of the corporation has not been decreed. We conclude that the plaintiff had the right to maintain this suit.

In this case the prayer for the appointment of a receiver furnishes an additional ground of equity jurisdiction. It seems to be the rule in other jurisdictions that a court of equity has inherent authority to appoint receivers of corporations in a proper case independent of statute. 4 Pomeroy's Equity Jurisprudence, 4th ed., Section 1537; 16 Fletcher Cyclopedia Corporations, Permanent Edition, Section 7714. But the rule in this State is otherwise. Code, 53-6-1, provides that "A court of equity may, in any proper case, pending therein, in which funds or property of a corporation, firm or person are involved, and there is danger of the loss or misappropriation of the same, or a material part thereof, appoint a special receiver of such funds or property, or of the rents, issues and profits thereof or both, * * *." It has been held that "In order to give a court of equity jurisdiction for the appointment of a special receiver under * * * [Code, 53-6-1], there must be a suit pending in such court involving the property of a corporation, firm or person, and it must be made to appear in the cause that there is danger of loss or misappropriation of the property, or a material part

thereof. Such suit cannot be maintained where the basis of equity jurisdiction alone is the appointment of such receiver, but there must be equity jurisdiction independent of the application therefor." *Rainey* v. *Freeport Smokeless Coal & Coke Co.*, 58 W. Va. 424, 429, 52 S. E. 528; *Baltimore Bargain House* v. *St. Clair*, 58 W. Va. 565, 571, 52 S. E. 660; *Myers Bros.* v. *Harmon Bros.*, 78 W. Va. 460, 89 S. E. 146; *Nolan* v. *Coal Co.*, 119 W. Va. 545, 194 S. E. 347.

The instant case, however, is distinguishable from the *Baltimore Bargain House, Myers Bros.*, and *Nolan* cases, above cited, in that the *Baltimore Bargain House* and *Myers Bros.* cases were not brought by a stockholder or a creditor of a corporation. In the *Nolan* case the suit was brought by an alleged director, not required to be a stockholder, and by an alleged stockholder. Moreover the dissolution of a corporation was not contemplated in the *Nolan* case, the object therein being to preserve the status quo pending litigation. But this is a suit by a stockholder praying for the appointment of a receiver of the assets of a corporation, and its eventual dissolution. The instant suit is based upon Code, 31-1-82, which authorizes a suit by a creditor, stockholder or member for the appointment of a receiver "to take charge of and administer the assets of the corporation." The *Rainey* case holds that a stockholder or creditor, under Code, 31-1-82, may apply for the appointment of a receiver. *Waggy* v. *Lumber Co.*, 69 W. Va. 666, 72 S. E. 778. See *Lamp* v. *Building Association*, 62 W. Va. 56, 62, 57 S. E. 249. Plaintiff being a stockholder of the corporation, praying for a receiver of its assets and its dissolution, comes within Code, 31-1-82, and has the right to maintain a suit by virtue of that statute.

Though under Code, 31-1-82, a court of equity has jurisdiction of a suit by a stockholder for the appointment of a receiver, it must be alleged and proved that sufficient cause for the appointment of a special receiver exists. *Rainey* v. *Freeport Smokeless Coal & Coke Co.*, *supra; Waggy* v. *Lumber Co.*, *supra.*

We observe that if the right to inspect and examine the books and records of the corporation accorded by Code, 31-1-74, were the only right asserted in this suit, equity would not have jurisdiction. Mandamus is the proper remedy for vindication of that right. *Nolan* v. *Coal Co., supra;* 4 M. J., Corporations, Section 130. See *Brown* v. *Crystal Ice Co.,* (Tenn.), 122 S. W. 84; 19 A. & E. Anno. Cas. 308.

Is plaintiff's bill of complaint sufficient to authorize the relief granted by the court? "A bill filed by a minority stockholder of a corporation seeking relief against the managing officers upon the grounds of mismanagement and misappropriation must allege the particular things done by such managing officers constituting mismanagement, and the particular acts of misappropriation. It is not sufficient to charge that such managing officers have been guilty of mismanagement and have misappropriated the corporate funds, but the facts justifying these conclusions must be stated." *Moore* v. *Railway Co.,* 80 W. Va. 653, 93 S. E. 762; *Robinson* v. *Company,* 110 W. Va. 143, 157 S. E. 85. See *Ward* v. *Hotel Randolph Co.,* 65 W. Va. 721, 63 S. E. 613; *Wilson* v. *Maddox,* 46 W. Va. 641, 33 S. E. 775. Measuring the bill of complaint in this case by the principles enunciated in the *Moore* case, and other cases above cited, the bill is wholly deficient. The bill of complaint pleads generalities, and conclusions. The specific acts of mismanagement and fraud on the part of McLuckey, supporting such conclusions, are not alleged. It is true that the affidavits herein mentioned filed by plaintiff in support of his motion may indicate irregularities in stockholders' and directors' meetings; but we do not think such irregularities, if they exist, are fatal to the interest of the plaintiff or so seriously detrimental to the interests of the corporation as to call for the relief here sought. The affidavits show increases in McLuckey's salary in one instance, and a contingent increase in another. However, the present state of the record does not establish irregularities, nor is it shown that the increases in his salary were unauthorized. Even treating the affidavits as *prima facie* evidence of such irregularities, they are not 'spe-

cifically pleaded, and upon no theory can the affidavits be treated as supplementing the bill of complaint.

Plaintiff does specifically allege the oral agreement relative to ownership of the capital stock. From such allegations it may be assumed that the agreement was made prior to or contemporaneously with the issuance of the charter. Defendants contend that the oral agreement can neither be pleaded nor proved, if in fact it was made, as it violates the parol evidence rule, and have cited many authorities as upholding that contention. The quoted provision of the charter is pertinent in that it is at least arguable that such agreement contradicts the written provision of the charter hereinabove quoted.

The language of the provision of the charter with reference to holding of the stock is equivocal, in that it may relate to the right of the corporation to purchase, hold, sell and transfer its capital stock, or the right of the corporation, through its board of directors, to control the issuance of its capital stock to stockholders or prospective stockholders. We do not think it is necessary to construe its meaning. Even if the oral agreement were alleged and established by proof, such agreement would present a controversy primarily between Hall and Mc-Luckey, though it is indirectly involved in this suit. We do not pass upon the respective contentions of the litigants in this regard.

Plaintiff contends in his brief that he has the preemptive right to purchase additional capital stock of the corporation. That right has been defined and enforced in some jurisdictions as giving a stockholder the right to purchase the capital stock of a corporation in instances where there is an increase of capital stock over that originally authorized. In other jurisdictions it has been held that the preemptive right to purchase capital stock applies to sales of stock originally authorized but unissued. See annotation 52 A. L. R. 220, 234, and 11 Fletcher Cyclopedia Corporations, Section 5160. In this State we are committed to the principle that the preemptive right of stockholders to

purchase the capital stock of a corporation is applicable to stock originally authorized and unissued. *Thurmond* v. *Paragon Oil & Gas Co.*, 82 W. Va. 49, 95 S. E. 816.

Conceding that plaintiff has the preemptive right to purchase additional capital stock of the corporation, it is neither pleaded nor proved that such right has been denied him. On the contrary, the answer of the defendants alleges that plaintiff was solicited to purchase additional stock of the corporation but declined to do so.

At this point it is well to note that defendants contend that plaintiff has assumed inconsistent positions, with reference to the oral agreement and the preemptive right of plaintiff to purchase additional stock. Cases in this jurisdiction are cited for the proposition that a party to a litigation may not assume inconsistent positions in a suit or a series of suits. Such principle is well established. But we do not think this record calls for a discussion or application of that principle. We perceive no inconsistency in plaintiff's assertion of a preemptive right to purchase additional capital stock of the corporation and the oral agreement alleged by him.

For discussions of reasonable restrictions on the sale and transfer of corporate stock authorized by general law or the charter of a corporation, see *Lawson* v. *Household Finance Corp.*, (Del.), 152 A. 723; *Brown* v. *Little, Brown & Co.*, (Mass.), 168 N. E. 521, 525.

The facts well pleaded in the bill of complaint, being treated as true for the purpose of the demurrer, and considering them with utmost liberality, we are of opinion that said allegations are insufficient, and that the demurrer to the bill should have been sustained.

The proof, or rather the lack thereof, disclosed by this record presents a situation which does not authorize the appointment of a special receiver, and it is unnecessary to repeat what has been said with reference thereto. However, it may be added that the appointment of a special receiver of the property and records of a corporation calls for the taking of private property from the

control and management of persons who presumably have been duly authorized to manage and control it, and placing it in the hands of an officer appointed by a court.

The sufficiency of the bill has hereinabove been discussed, and that discussion will not be repeated here. But disregarding such insufficiency for the moment, the allegations therein contained are denied and not proved. In this state of the record it was the duty of the trial court to deny the appointment of a receiver. High on Receivers, 4th Edition, Section 24; *Wilson* v. *Maddox, supra; Smiley* v. *The New River Co.,* 72 W. Va. 221, 237, 77 S. E. 976.

The same principle is applicable to the award of the injunction. The allegations of the bill being denied by a sworn answer and insufficient proof being offered by plaintiff, the injunctive relief should have been denied.

The audit of the books of the corporation under the supervision of the court calls for interference in the management of a private corporation and the disclosure of confidential matters. No emergency or danger of immediate loss, in the absence of an audit was alleged. The action of the trial court in decreeing such audit without proof of the issues of fact raised by the pleadings was error.

The trial court in awarding the injunction herein disregarded a plain statutory mandate. Code, 53-5-9, provides: "An injunction (except in the case of any personal representative or other persons from whom, in the opinion of the court or judge awarding the same, it may be improper to require bond) shall not take effect until bond be given in such penalty as the court or judge awarding it may direct." This Court in construing and applying the above statute has held that: "An order or injunction is of no legal effect under * * * [Code, 53-5-9] unless the Court requires a bond or recites in the order that no bond is required for good cause, or unless the movant is a personal representative." *Meyers* v. *Land Co.,* 107 W. Va. 632, 149 S. E. 819. In the instant case no bond was required, nor was there any recital made in the order to that effect,

nor was there any showing of good cause for not so requiring. Clearly, the injunction awarded herein is of no legal effect, and it was error to grant it.

We observe that plaintiff does not plead that he has applied to the stockholders or the board of directors of the corporation for relief, in accordance with the rule relative to *intra vires* corporate acts as laid down in the cases of *Rathbone* v. *Gas Co.*, 31 W. Va. 798, 8 S. E. 570; *Ward* v. *Hotel Randolph Co., supra; Smiley* v. *New River Co.*, 72 W. Va. 221, 77 S. E. 976; *Parrott* v. *Coal Co.*, 91 W. Va. 44, 50, 112 S. E. 191. This omission to plead an important element of plaintiff's case is significant when it is considered that: "* * * Any number of stockholders owning in the aggregate at least one-tenth of the number of shares outstanding may call a meeting." Code, 30-1-21, as amended by Chapter 29, Acts of the Legislature, 1945.

The bill of complaint and the answer herein disclose that no corporate acts *ultra vires* are involved. We find nothing in this record showing that plaintiff has applied to the stockholders or the board of directors of the corporation for relief. On the contrary, plaintiff alleges that he made application to McLuckey. It is true that under the decisions of this Court in instances where it would be useless to apply to the stockholders or board of directors a dissenting minority stockholder is not required to apply to the directors or stockholders, but may go directly to a court of equity. *Crumlish* v. *Railroad Co.*, 28 W. Va. 623, 632; *Rathbone* v. *Gas Co., supra.* We do not think that plaintiff has shown any effort on his part to obtain relief from the stockholders or directors, or that his application to them would have been useless. It may be that he can allege and prove that application to the stockholders or board of directors would be unavailing upon further development of this cause.

We note that Cecil W. Lovell and Edith Gamble Basham have not been made parties to this suit, although it is alleged in the bill of complaint that stock has been sold to certain unnamed parties, and the affidavits filed by plaintiff disclose that said Lovell and Basham at least

have some rights in the corporation. If the affairs of the corporation are to be wound up and the corporation dissolved, said Lovell and Basham would be necessary parties. *Styles* v. *Laurel Fork O. & C. Co.*, 45 W. Va. 374, 32 S. E. 227.

The Circuit Court of Raleigh County erred in overruling the demurrer to the bill of complaint; in appointing a special receiver on insufficient pleadings and proof; in directing an audit of the business of the corporation under the supervision of the court; and in awarding an injunction against the defendant McLuckey, without requiring bond.

Therefore, the decree of said court is reversed and this cause is remanded with directions to sustain the demurrer to the bill of complaint, with leave to amend, and in the event of sufficient amendment of the bill, that this cause be further proceeded with in accordance with the principles enunciated in this opinion.

*Reversed and remanded
with directions.*